Warren L. WILLIAMS, David M. Karandos, UBS Financial Servs., Inc., Morgan Stanley & Co., Inc., Robert Frankel, Huttelston Assocs., Inc., McInnes Maggart Consulting GRP., L.L.C., and Crowe Horwath, LLP, Appellants–Defendants,

v.

David ORENTLICHER, John F. Springer, Frederick J. Suman, J. Sue Kelly, Steve Gookins, Brenda Pike, and Edward P. Sullivan, as Trustees of the I.S.T.A. Insurance Trust, Appellees–Plaintiffs.

No. 49A02–1003–PL–249.

Court of Appeals of Indiana.

Dec. 28, 2010.

Rehearing Denied April 6, 2011.

Dennis F. Cantrell, Tara Stapleton Lutes, Cantrell, Strenski & Mehringer, LLP, Indianapolis, IN, Christopher J. Rillo, Paula M. Ketcham, Lisa Carey–Davis, Schiff Hardin LLP, Chicago, IL, Attorneys for Appellants.

Andrew W. Hull, Alice M. Morical, Hoover Hull LLP, Indianapolis, IN, W. Gary Kohlman, Jeremiah A. Collins, John M. West, Douglas L. Greenfield, Abigail V. Carter, Daniel A. Zibel, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Warren L. Williams and Robert Frankel are former employees of the Indiana State Teacher's Association ("ISTA"). As employees of the ISTA, they also acted as fiduciaries with the ISTA Insurance Trust ("the Trust"), an entity legally separate and distinct from the ISTA. Their employment agreements with the ISTA contained arbitration clauses. In July of 2009, the Trust, by its trustees ("the Trustees"), filed suit against Williams and Frankel. In turn, Williams and Frankel filed a motion to compel arbitration of the Trust's claims, which the trial court denied. They now bring this interlocutory appeal[1] from the trial court's order denying their motion to compel arbitration. Williams and Frankel raise three issues for our review, one of which we find dispositive: whether the Trust is bound by the arbitration provisions of Williams' and Frankel's employment agreements with

---

1. This interlocutory appeal is authorized by statute. *See* Ind.Code § 34–57–2–19(a)(1); *see also* Ind. Appellate Rule 14(D) (authorizing interlocutory appeals as provided by statute). None of the other named defendants take part in this appeal. Because this is an appeal from a pretrial ruling, the facts discussed herein are as stated in the complaint and assumed as true by the parties on appeal.

the ISTA. We hold the Trust is not bound by Williams' and Frankel's contracts with the ISTA.[2] Accordingly, we affirm the trial court's denial of the motion to compel arbitration.

## FACTS AND PROCEDURAL HISTORY[3]

The ISTA is a labor organization that represents employees of Indiana's public schools. It is governed by a Board of Directors, which employs an Executive Director along with other staff. In 1985, the ISTA established the Trust, a common-law trust intended to provide insurance programs for Indiana school corporations to adopt as benefit plans for their employees. The Trust is a legally separate entity from the ISTA and is managed by a nine-member Board of Trustees.

According to the Trust's governing documents, the Executive Director of the ISTA is *ex officio* a trustee of the Trust. That is, the Executive Director is a trustee by virtue of his position with the ISTA. Similarly, the Deputy Executive Director of the ISTA's Financial Services Program ("FSP") serves *ex officio* as Director of the Trust.[4] The Director of the Trust is "the named fiduciary of the Trust and [is] responsible for the administration of the Trust." Appellants' App. at 206A.

From 1984 until his resignation on May 14, 2009, Williams was the Executive Director of the ISTA. Because of his position with the ISTA, Williams was a trustee of the Trust. Further, in 2002 the ISTA's Board of Directors elected Williams the CEO of the Trust. As such, "[h]e was specifically responsible for day-to-day oversight of the Trust's assets, and [he] was the primary contact between the Trust and its investment advisors." *Id.* at 204A. As CEO and trustee, Williams had a fiduciary relationship with the Trust.

From 2002 until his resignation on April 2, 2009, Frankel was the Deputy Executive Director of the FSP.[5] FSP is "the trade name for the financial products and services provided through several entities affiliated with ISTA." *Id.* at 205A. And, again, because of his position with the ISTA, Frankel was the Director of the Trust.

In July of 2008, Williams and Frankel renewed their employment agreements with the ISTA. Williams' agreement provided that he "accepts employment as the Executive Director of the [ISTA] . . . and [covenants] to carry out efficiently and properly the duties and responsibilities of the Executive Director position, as defined from time to time by the Board of Directors." *Id.* at 361A. Frankel's agreement stated that he "accepts employment

2. Because we hold that the Trust is not bound by Williams' and Frankel's contracts with the ISTA, we need not consider Williams and Frankel's additional argument that the Trustees' claims are within the scope of the arbitration clauses.

3. We held oral argument on October 27, 2010. Judge Paul D. Mathias was assigned to this case but recused following oral argument and has had no further participation in the case.

4. In total, three of the Trust's nine trustees held their positions *ex officio*. The other six

trustees are appointed by the ISTA President with the approval of the ISTA Board of Directors. In addition to the appointment of trustees, the Trust's governing documents grant the ISTA the power to remove up to two trustees per year, to appoint and approve successor trustees, to appoint a CEO of the Trust, to approve amendments to the Trust's governing documents, and to terminate the Trust.

5. The parties occasionally, but erroneously, refer to Frankel's position at the ISTA as the "Director" of the FSP.

as the Deputy Executive Director of [the FSP] ... and [covenants] to carry out efficiently and properly the duties and responsibilities of the Deputy Executive Director of [the FSP] position, as defined from time to time by the Board of Directors." *Id.* at 370A. Neither agreement mentions the Trust.

Each of the employment agreements contained the following arbitration clause:

*Dispute Resolution.* Should *any issue arise regarding the performance of any obligation under the terms of this Agreement,* including the invocation of the ["]with cause["] termination provision contained herein, the parties agree that prior to initiating or filing any lawsuit regarding such issue[ ] that they will make reasonable efforts to resolve any such issue with [sic] reasonable time of such written notification to either party. Should the parties be unable to resolve the issue, the parties agree to submit the issue to arbitration before an arbiter selected by the parties through the alternative striking procedure from a panel of seven arbiters provided by the American Arbitration Association. Any requests for arbitration of a ["]with cause["] termination shall be made by the Employee in writing within thirty (30) days of receipt of the notice of termination. In any arbitration, each party shall bear their [sic] own costs and attorney's fees and the cost of the arbiter's time shall be split equally. If an arbiter should determine that the termination is without cause, the arbiter may only award the Employee the salary and benefits provided by this Agreement for a termination without cause, subject to mitigation of damages by the Employee.

*Id.* at 362A, 371A (emphasis added). On April 2, 2009, and May 14, 2009, Frankel and Williams, respectively, resigned from their employment with the ISTA.

On July 24, 2009, the Trustees, on behalf of the Trust, filed their complaint against Williams and Frankel, among others. According to the Trustees' complaint, Williams, in his role as CEO and trustee of the Trust, breached his fiduciary duties to the Trust; "conspired ... to place the bulk of the Trust's assets in alternative investments and private placements without informing the Trust's Board of Trustees [either] of the risks associated with such investments" or that other named defendants "would gain thereby," *id.* at 236A; and aided and abetted other named defendants in their respective breaches of fiduciary duties. Likewise, the Trustees alleged that Frankel, in his role as Director of the Trust, breached his fiduciary duties to the Trust on numerous occasions. According to the Trustees, because of the alleged malfeasance of Williams, Frankel, and others, the Trust

ceased serving as a funding vehicle for the [medical insurance programs] and the [long-term disability insurance programs]. As of [June 30 and July 31, 2009, the Trust] was without liquid resources to pay future benefits—with an estimated present value of at least $34 million—to some 650 [long-term disability] claimants, or to satisfy the claims of participating school corporations with respect to the Trust's "claims stabilization reserves," totaling an additional estimated amount of several million dollars, or to satisfy other obligations.

*Id.* at 208A. The ISTA is not a named party in the Trustees' lawsuit.

On July 27, 2009, Williams filed a demand for arbitration against the ISTA, alleging almost $300,000 in unpaid compensation and benefits. On October 8, the ISTA filed an answer and counterclaim against Williams. In particular, the ISTA "set[ ] forth the following counterclaims against Mr. Williams: tortious malfea-

sance, negligent performance of a contract, unjust enrichment, and breach of contract." *Id.* at 395A. The ISTA also stated that it would seek "repayment of all damages resulting from Mr. Williams' acts and omissions underlying all counterclaims, including, but not limited to[,] liabilities caused by Mr. Williams." *Id.* That arbitration proceeding is currently stayed pending this appeal. The Trust is not a party to Williams' arbitration proceeding.

On November 6, Frankel also filed a demand for arbitration against the ISTA, alleging that the ISTA improperly refused the payment of certain benefits. On December 17, the ISTA answered Frankel's complaint and alleged the following counterclaims:

> malfeasance, recklessness, negligence, and breach of contract, each of which caused pecuniary damage to ISTA. As Deputy Executive Director of the [FSP], Mr. Frankel failed to maintain a state-issued securities license necessary for payments to be made by a third party, Metlife, to the ISTA Financial Services Corporation ("FSC"), a wholly-owned subsidiary of ISTA. These actions and omissions caused harm to ISTA and FSC in the amount of approximately $300,000 in lost commissions. ISTA also asserts that this behavior constituted a breach of Mr. Frankel's employment contract with ISTA.

*Id.* at 398A. Frankel's arbitration proceeding is also stayed pending this appeal, and the Trust is not a party to that proceeding.

On November 9, 2009, Williams and Frankel jointly filed in the Marion Superior Court a motion to compel arbitration of the Trustees' claims against them. Williams and Frankel argued that,

> [b]ut for their status as employees of ISTA, Williams and Frankel would have had none of the responsibilities that they

are alleged to have failed to perform. The Trustee[s'] claims against Williams and Frankel in this lawsuit demonstrably arise from their employment agreements and therefore are unequivocally subject to arbitration.

*Id.* at 117A. In addition, Williams and Frankel asserted that the Trustees were equitably estopped from contesting the motion to compel arbitration both because the Trustees' claims were "no differen[t]" from ISTA's counterclaims in the arbitration actions and also because the Trustees were seeking to enforce obligations of the employment agreements "while at the same time avoiding the arbitration agreements set forth in those contracts." *Id.* at 119A.

The trial court held a hearing on Williams and Frankel's joint motion to compel arbitration. On February 26, 2010, the court denied the motion. Thereafter, the court denied Williams and Frankel's motion to stay the trial court proceedings pending appeal, and this court denied a similar motion on July 2. This appeal ensued.

## DISCUSSION AND DECISION

 Williams and Frankel appeal the trial court's denial of their motion to compel arbitration. Our standard of review is well established:

> The trial court's denial of a motion to compel arbitration is reviewed de novo. The party seeking to compel arbitration must demonstrate the existence of an enforceable arbitration agreement and that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. Whether the parties agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent. Courts in Indiana have long recognized the freedom of parties to en-

ter into contracts and have presumed that contracts represent the freely bargained agreement of parties. Thus, imposing on parties a policy favoring arbitration before determining whether they agreed to arbitrate could frustrate their intent and freedom to contract. We will decide whether the dispute, on its face, is covered by the language of the arbitration provision. In doing so, we will apply ordinary contract principles governed by state law. If we determine that the parties have agreed to arbitrate, Indiana policy favors arbitration. *Med. Realty Assocs., LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 874 (Ind.Ct.App. 2010) (quotations and citations omitted). Further, when construing arbitration agreements, "every doubt is to be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Bielfeldt v. Nims*, 805 N.E.2d 415, 418 (Ind.Ct.App.2004) (quotations omitted), *trans. denied.*

■■ The dispositive issue on appeal is whether the Trust, which is not a party to either Williams' or Frankel's employment agreement, may be subject to the arbitration provisions in those of the agreements. Generally speaking, "a party cannot be required to submit to arbitration unless he or she has agreed to do so." *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 416 (Ind.Ct.App.2004), *trans. dismissed.* Thus, "where a court is asked to compel or stay arbitration, it faces the threshold question of whether the parties have agreed to arbitrate the particular dispute." *Id.*

While acknowledging that the Trust is not a party to the employment agreements, Williams and Frankel assert three grounds for holding that the Trust is nonetheless bound by the arbitration clauses. First, Williams and Frankel assert that the Trust is estopped from disclaiming the applicability of the arbitration clauses because, "if a party claims a breach of an agreement that contains an arbitration clause, he is required to arbitrate that claim regardless of whether he signed the agreement." Appellants' Br. at 17. Second (but analogous to their first argument), they claim that the Trust was a third party beneficiary of the employment agreements and is suing for breach of those agreements; as such, the Trust must be bound by the arbitration clauses. And, third, they contend that the "close relationship" between the ISTA and the Trust requires arbitration to avoid "evisceration of the underlying arbitration agreement between the signatories." *Id.* at 17–18 (quotation omitted). We address each argument in turn.

### Estoppel

Williams and Frankel first contend that the Trust must arbitrate its claims because they are "premised on the duties and obligations set forth in the contract, *irrespective* of whether or not that party signed the contract." *Id.* at 18. In support, Williams and Frankel rely on *Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836 (7th Cir. 1981). In that case, an architect entered into a construction contract with a property owner. The architect had a separate agreement with a construction management service. And the property owner had a separate agreement with a mason.

Pursuant to the mason-owner contract, the construction manager that had contracted with the architect was designated as the manager for the mason's services, even though the manager was not a signatory to the mason-owner contract. The mason-owner contract had an arbitration clause.

Thereafter, the owner discharged the mason and filed a demand for arbitration.

After various procedural events, the mason sued the owner and the construction manager in federal court for breach of contract. The owner and the manager both moved to compel arbitration, which the district court denied. The Seventh Circuit reversed, reasoning as follows:

> Hughes [the mason] now argues ... that it cannot be required to arbitrate because J.A. [the manager] is not entitled to invoke the arbitration provision of the Hughes–Clark [mason-owner] agreement since it is not a party to that agreement.
>
> Whatever the merit of this argument, we believe Hughes is equitably estopped from asserting it in this case, because the very basis of Hughes' claim against J.A. is that J.A. breached the duties and responsibilities assigned and ascribed to J.A. by the agreement between Clark and Hughes. Hughes has characterized its claims against J.A. as sounding in tort, i.e., intentional and negligent interference with contract. In substance, however, Hughes is attempting to hold J.A. to the terms of the Hughes–Clark agreement. Hughes' complaint is thus fundamentally grounded in J.A.'s alleged breach of the obligations assigned to it in the Hughes–Clark agreement. Therefore, we believe it would be manifestly inequitable to permit Hughes to both claim that J.A. is liable to Hughes for its failure to perform the contractual duties described in the Hughes–Clark agreement and at the same time deny that J.A. is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause. "In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage." *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 692 (S.D.N.Y.1966). *See also Avila Group, Inc. v. Norma J. of California,* 426 F.Supp. 537, 540 (S.D.N.Y.1977) ("To allow (defendant) to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."). ·
>
> . . . .
>
> Presumably, James Associates and J.A. are not contractually liable for breach of obligations set forth in the Hughes–Clark agreement since they are not parties to that agreement. Rather, James Associates was obligated to perform the duties of construction management by virtue of its contract with Clark, which imposed those duties upon James Associates in consideration of 7.5% of the total construction cost. The construction management duties were in turn imposed on J.A. by virtue of the James Associates–J.A. contract....
>
> But Hughes seeks in this action to hold J.A. responsible for its failure to perform (or its improper performance of) the obligations set forth in the Hughes–Clark agreement....
>
> Hughes has thus merely attempted to characterize alleged failures to perform various construction management duties (or their improper performance) as tortious interferences with its contractual relations with Clark. Although we question the appropriateness of this characterization, the facts alleged constitute breaches of obligations spelled out in the Hughes–Clark agreement. *Ultimately, therefore, Hughes must rely on the terms of the Hughes–Clark agreement in its claims against J.A. Hence, Hughes is estopped from repudiating the arbitration clause of this agreement, upon which it relies.*

*Id.* at 659 F.2d at 838–41 (emphasis added; footnotes omitted). And, in a footnote, the court added:

Even assuming that Hughes' complaint states a cause of action for tortious interference with contract, we believe Hughes, in the peculiar circumstances before us, is estopped from denying J.A. the benefit of the arbitration clause with regard to claims that are as intimately founded in and intertwined with the underlying contract obligations as Hughes' claims appear to be here. The outcome urged by Hughes would have the tail wagging the dog, since it would allow a party to defeat an otherwise valid arbitration clause simply by alleging that an agent of the party seeking arbitration has improperly performed certain duties under the contract and thereby committed a tort that is so integrally related to the subject of arbitration between the principal parties as to constitute a bar to such arbitration.

*Id.* at 841 n. 9; *see also MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (holding that "equitable estoppel allows a nonsignatory to compel arbitration," but to determine whether equitable estoppel applies the court must scrutinize the nature of the claims "to determine whether those claims fall within the scope of the arbitration clause"); *Sunkist Soft Drinks v. Sunkist Growers, Inc.,* 10 F.3d 753, 756–57 (11th Cir.1993) (same).

■ Again, Williams and Frankel contend that the Trust must be held to the arbitration clauses of their ISTA employment agreements because the Trustees' claims against them are "fundamentally grounded" on those agreements. Appellants' Br. at 19. Specifically, they contend as follows:

The Trustees themselves allege in their complaint that Williams and Frankel served the Trust *ex officio*—that is to say, *solely by virtue of their employment with ISTA.* If Williams and Frankel had never accepted the ISTA positions defined by the Employment Agreements, they never would have undertaken the fiduciary duties that they are alleged to have breached in this lawsuit. Thus, even though the Trustees have alleged the tort of a breach of fiduciary duty, their claims are fundamentally grounded in the employment relationships created by the Employment Agreements. The Trustees "cannot rely on the contract when it works to [their] advantage, and repudiate it when it works to [their] disadvantage." Because the Trust's claims arise from ISTA's Employment Agreements with Williams and Frankel, this Court should find that the Trustees are required to arbitrate their claims.

*Id.* at 19–20 (citations omitted; alterations original). We cannot agree with Williams and Frankel.

First, the case law relied on by Williams and Frankel is clearly distinguishable. In those cases, a signatory brought suit on a contract against a nonsignatory, and the nonsignatory moved to compel arbitration. Thus, when the nonsignatory concedes arbitrability on a contract issue, courts have routinely held the signatory to be bound by its arbitration clause. *E.g., MS Dealer Serv. Corp.,* 177 F.3d at 947; *Sunkist Soft Drinks,* 10 F.3d at 756–57; *Hughes Masonry Co.,* 659 F.2d at 838–41. Or, as the United States Court of Appeals for the Second Circuit has stated, "because arbitration is guided by contract principles[,] ... a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC,* 268 F.3d 58, 62 (2nd Cir.2001).

Here, however, Williams and Frankel are both the signatories and the parties seeking to compel arbitration against the

Trust, a nonsignatory. Thus, equity does not compel the Trust to arbitrate. It is not, as Williams and Frankel suggest, a mere coincidence that the cited case law only invokes estoppel when a nonsignatory seeks relief. The nonsignatory is the party that must make the request, because it is the party not bound by the contract.

Neither are the Trustees' allegations against Williams and Frankel based on the employment contracts. *See MS Dealer Serv. Corp.,* 177 F.3d at 947. Rather, the Trustees allege that Williams, in his role as CEO and trustee of the Trust, breached his fiduciary duties to the Trust; "conspired ... to place the bulk of the Trust's assets in alternative investments and private placements without informing the Trust's Board of Trustees [either] of the risks associated with such investments" or that other named defendants "would gain thereby," Appellants' App. at 236A; and aided and abetted other named defendants in their respective breaches of fiduciary duties. Likewise, the Trustees alleged that Frankel, in his role of Director of the Trust, breached his fiduciary duties to the Trust on numerous occasions.

> As the Trustees correctly summarize:
> the claims brought against Williams and Frankel by the Trustees are based on common-law duties owed to [the Trust] by Williams and Frankel as fiduciaries of the Trust. The Trust's claims against Williams and Frankel do not turn on anything in their employment contracts, and indeed the Trustees' claims would be unaffected even if Williams' and Frankel's employment contracts did not exist.
> . . . .

It may well be correct as a factual matter that Williams and Frankel would not have assumed their fiduciary positions as officers of [the Trust]—and thus become subject to the fiduciary duties to the Trust on which the Trustees' claims against them are based—"but for" their employment by [the ISTA]. But that fact falls far short of binding the Trust, in pursuing claims against Williams and Frankel for breach of the fiduciar[y] duties they owed to the Trust, to whatever provisions are contained in the employment contracts that Williams and Frankel negotiated with the [ISTA].

In fact, it is not unusual that in the course of performing a contract a party may assume common law or statutory duties toward third parties that do not arise from the contract—and such duties certainly can be enforced by the third party independent of whatever limitations the contract places upon its signatories with respect to remedying contractual violations.

Appellees' Br. at 11.

The legal duties allegedly breached by Williams and Frankel flowed to the Trust as a matter of Indiana law and not by the express terms of their employment contracts with the ISTA. *See, e.g.,* Ind.Code §§ 30–4–1–1, 30–4–3.5–1 to –13. That is, the Trustees brought suit against Williams and Frankel on grounds independent of the employment agreements with the ISTA. And the outcome of the Trustees' suit is not dependent upon Williams' or Frankel's status as an employee of the ISTA.

In *R.J. Griffin & Co. v. Beach Club II Homeowners Association, Inc.,* 384 F.3d 157 (4th Cir.2004), a homeowners association sued a construction company for construction defects in a condominium building, alleging negligence and breach of the implied warranty of good workmanship. The construction company sought arbitration on the basis of its contract with the developer, to which the homeowners association was not a party, on the grounds that "the Association is seeking a direct

benefit from the general contract[, which] was ... the source of both the duty and warranty that [the construction company] allegedly breached...." 384 F.3d at 162 (first omission original).

The Fourth Circuit rejected the construction company's request for arbitration. In doing so, the court reasoned as follows:

> Under South Carolina common law the legal duties Griffin [the construction company] allegedly violated arise from its role as the builder of the Beach Club condominium; these duties are not dependent on the terms of the general contract. It is true that the formation of the contract meant that Griffin would construct the condominium, thereby assuming the common law duties South Carolina places on a builder. Griffin's assumption of these duties benefited the Association, but the benefit flowed from South Carolina law, not from the construction specifications of the general contract. *See MAG Portfolio Consult v. Merlin Biomed Group*, 268 F.3d 58, 61 (2d Cir.2001) (equitable estoppel does not apply when a benefit results from "the contractual relation of parties to an agreement ... [and] not ... [from] the agreement itself"); *Coots v. Wachovia Sec., Inc.*, 304 F.Supp.2d 694, 699 (D.Md. 2003) (benefit is indirect if it "flows as a result of contract formation").

*Id.* (alterations original; some citations omitted).

That reasoning applies here. Williams' and Frankel's responsibilities to the Trust resulted from their contractual relationship with the ISTA but were not dependent upon the terms of their employment contracts. In other words, their responsibilities vis-à-vis the Trust did not arise

from an obligation "under the terms" of the agreements. *See* Appellants' App. at 362A, 371A. And, again, the Trust did not agree to arbitrate and does not seek relief under those agreements. Accordingly, under prevailing case law, the Trust is not estopped to decline arbitration.

*Whether the Trust is a Third Party Beneficiary*

■ Second, Williams and Frankel contend that "the Employment Agreements conferred benefits on the Trust, which the Trust accepted," and, therefore, that the Trust should be bound by the arbitration clauses. Appellants' Br. at 22. It is unclear how this one-paragraph argument is substantively different from Williams and Frankel's first argument. Indeed, in their response to this subissue, the Trustees simply incorporate earlier responsive arguments.

Nonetheless, the dissent would find this issue dispositive based on this court's opinion in *TWH, Inc. v. Binford*, 898 N.E.2d 451, 454 (Ind.Ct.App.2008).[6] In *Binford*, third party beneficiaries brought suit on the contract from which they had benefitted. In line with most authorities, we held that, because the beneficiaries sought affirmative relief under the contract, they were bound by the contract's arbitration provisions.

But, as discussed in detail above, that is not what occurred here. The Trust is neither asserting a contract claim nor disavowing a contract. Again, the Trust asserts common law claims against Williams and Frankel that are independent of their employment contracts with the ISTA. The dissent would expand the rule followed in *Binford* to require that a nonparty arbitrate regardless of whether that

---

6. The author of the instant opinion was also the author of this court's opinion in *Binford.* Indeed, the panel in both appeals is identical.

party seeks relief under the contract containing the arbitration provision. As such, we hold that this argument is resolved by our prior discussion and that Williams and Frankel may not compel the Trust, even as a third party beneficiary, to arbitrate on these facts.

### "Close Relationship" Theory

■ Finally, Williams and Frankel assert that the Trustees are required to arbitrate their claims "under agency or related principles." Appellants' Br. at 20 (quotation omitted). Specifically, Williams and Frankel suggest that

> the Trust and ISTA are so interconnected that ISTA's promise to arbitrate claims with its employees would be meaningless if the Trust were not also bound by it. The Trust shares ISTA's name and purpose—to benefit the employees of Indiana's public school corporations. The Trust and ISTA share officers and directors. Three of ISTA's top officers are also trustees. The remaining trustees are appointed by ISTA's president and approved by ISTA's Board of Directors. And the Trust's principal office is located at ISTA's headquarters.

*Id.* at 21.[7] Williams and Frankel also assert that the ISTA's contentions in the pending arbitration proceedings are, in substance, equivalent to the Trustees' allegations against them before the trial court.[8]

The dissent also emphasizes the close relationship between the ISTA and the Trust. But when asked at oral argument whether the Trust is an alter ego of the ISTA, counsel for Williams and Frankel stated that they are not making that argument. Rather, they contend that the two legally distinct entities are too "closely related" not to require the Trust to arbitrate.

Nothing in the dissent or Williams and Frankel's argument convinces us that, as a nonsignatory, the Trust can be compelled by a signatory to participate in arbitration. Again, neither employment agreement mentions the Trust or work to be done for the Trust. The Trust is not a party to either Williams' or Frankel's arbitration proceeding. And the ISTA is not a named party in the Trustees' lawsuit. To hold for Williams and Frankel here would extinguish the legal distinction between the ISTA and the Trust.

Even if the "close relationship" between the Trust and the ISTA was contemplated by the parties at the time the employment agreements were executed, again, "a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." *MAG Portfolio Consultant, GMBH,* 268 F.3d at 62. And there is nothing per se "unusual or at all improper" in a close relationship between a trust and its settlor. *See* Appellees' Br. at 18.

---

**7.** Williams and Frankel also note that the Indiana Securities Commissioner, Chris Naylor, stated in a complaint against the ISTA that the ISTA and the Trust "shared directors, employees, officers, offices, and funds to such an overlapping and interlocking extent that it is difficult or impossible to determine what actions were taken by and on behalf of which ISTA entity." Appellants' App. at 21. (quotation and citation to the record omitted). We decline Williams and Frankel's invitation to take judicial notice of Commissioner Naylor's

complaint. "The general rule against judicial notice of other proceedings is designed to ensure that facts alleged are indeed truly fact, not mere allegations." *See Bane v. State,* 579 N.E.2d 1339, 1341–42 (Ind.Ct.App.1991), *trans. denied.*

**8.** Williams and Frankel also raise this last point as a wholly separate argument in their briefs. We consolidate their assertions for purposes of our review.

Further, disallowing arbitration here will not, as Williams and Frankel contend, "eviscerate" the arbitration clause, as evidenced by the ongoing arbitration proceedings between the ISTA and Williams and Frankel.[9] The Trust is not the ISTA. And it is not more judicially efficient to compel the Trust to arbitrate its claims together with the ISTA because the Trust has named numerous other defendants in its complaint. Those allegations in the civil action will proceed with or without Williams and Frankel, just as Williams' and Frankel's arbitration proceedings will continue with or without the Trust. Finally, we agree with the Trustees' response that requiring Williams and Frankel "to litigate two separate disputes with two different entities in two different fora . . . is not contrary to equitable principles." *See id.* at 26.

## Conclusion

In sum, we hold that the trial court properly denied Williams and Frankel's motion to compel arbitration. The Trust is not a party to the employment contracts, and it is the party opposed to the motion to compel. As such, the Trust is not estopped from disclaiming the arbitration clauses, even if the Trust is a third party beneficiary to the contracts. And the "close relationship" between the Trust and the ISTA is not, on these facts, legally sufficient to compel the Trust to arbitrate its claims against Williams and Frankel.

Affirmed.

BAKER, C.J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

The employment contract between Williams and ISTA requires Williams to "devote his full time to the affairs of the Indiana State Teachers Association and to carry out efficiently and properly the duties of the Executive Director position, as defined from time to time by the Board of Directors." *Appellant's App.* at 361. The employment contract between Frankel and ISTA contains the same provision, substituting "Deputy Executive Director of ISTA Financial Services Program position" for "Executive Director." *Id.* at 370.

Pursuant to and as an integral part of their employment agreements, the duties imposed by the ISTA Board of Directors on Williams and Frankel included the performance significant managerial services for the Trust. In addition to serving *ex officio* as a Trustee of the Trust, Williams was directed by the ISTA Board of Directors to serve as Executive Director of the Trust. Because of his position with ISTA, Frankel served *ex officio* as Director of the Trust. Williams devoted approximately twenty percent of his total work with ISTA on the work of the Trust, and Frankel devoted forty percent of his time to the work of the Trust.

Neither Williams nor Frankel had a separate employment agreement with the Trust; and neither was compensated separately by the Trust for the work that either did on its behalf. Williams and Frankel were not outside directors or trustees; to the contrary, they had the day-to-day managerial responsibility for the Trust operations. Nothing in the record before us indicates that Williams or Frankel rendered any services to or on behalf of the

---

9. Williams and Frankel did not raise a Trial Rule 12(B)(8) motion to dismiss the Trustees' complaint or argue to the trial court that the complaint should be dismissed on the basis of comity.

Trust that were not included in the overall services that they rendered pursuant to the employment agreements.

The Trust received the benefits of Williams's and Frankel's services. The duties that Williams and Frankel carried out on behalf of the Trust, fiduciary and otherwise, were the duties (1) defined by the ISTA Board of Directors, (2) carried out as an integral part of their overall duties as full-time employees of ISTA, and (3) rendered pursuant to their employment agreements with ISTA. Because the services rendered by Williams and Frankel were rendered pursuant to their employment agreements with ISTA, the Trust was a third party beneficiary of such agreements.

The employment agreements contain provisions for arbitration "should any issue arise regarding the performance of any obligation under the terms of this Agreement. . . ." *Id.* at 362, 371. In *TWH, Inc. v. Binford*, 898 N.E.2d 451 (Ind.Ct.App. 2008), we held that a third party beneficiary of a contract containing an enforceable arbitration provision is bound by such provision even though such beneficiary was not a signatory to the agreement. "Where a contract contains a legally enforceable arbitration clause, the general view is that the beneficiary is bound by it to the same extent that the promisee is bound.' " *Id.* at 454 (quoting WILLISTON ON CONTRACTS § 37:24 at 154 (4th ed.2000)). A "beneficiary should not be able to sue for breach of contract and simultaneously disavow a term of the contract that required submission of disputes to arbitration." *Id.; see also Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md.App. 217, 674 A.2d 106, 143 (1996), *trans. granted, aff'd by* 346 Md. 122, 695 A.2d 153 (1997).

Here, the Trust's Complaint against Williams and Frankel alleges that Williams and Frankel breached their obligations as Executive Director and Director, respectively, of the Trust to oversee Trust investments in compliance with Trust policy and to keep the Board of Trustees of the Trust advised regarding such investments. These duties were not fiduciary duties imposed by law, but managerial duties imposed by ISTA upon its Executive Director and its Deputy Executive Director of ISTA Financial Services Program. These duties arose directly from the duties imposed by the employment agreements.

The Trust's Complaint alleges that "Williams and Frankel were obligated to act with ordinary care, skill, and prudence in managing the affairs of the Trust alleges," and that "Williams and Frankel failed to act with such skill, and prudence in managing the affairs of the Trust." Complaint, paragraphs 169–170, *Appellants' App.* at 35. These allegations fall squarely within the provision of the employment agreements that require each employee to "devote his full time to the affairs of the Indiana State Teachers Association and to carry out efficiently and properly the duties of the . . . position, as defined from time to time by the Board of Directors." *Id.* at 361. The affairs of the Indiana State Teachers Association included those of the Trust. As defined by the ISTA Board of Directors, the duties of the positions that Williams and Frankel held with ISTA required them to carry out their duties with the Trust.

The employment agreements provide for arbitration "should any issue arise regarding the performance of any obligation under the terms of this Agreement. . . ." *Id.* at 362. The Trust received the benefits of those agreements in the managerial services that Williams and Frankel provided. Having received the benefits of such agreements, the Trust should not now be able to disavow the arbitration provisions

contained therein. It should be bound to the arbitration provisions of such agreements to the same extent that ISTA itself is bound.

I would reverse the decision of the trial court and remand with instructions to grant the appellants' motion to compel arbitration.