# FOR PUBLICATION



FILED
Jun 22 2012, 9:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**DAVID WILLIAMS RUSSELL**
**DAVID I. RUBIN**
Harrison & Moberly, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MARIETTO V. MASSILLAMANY**
Starr Austen & Miller, LLP
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GERMAN AMERICAN FINANCIAL ADVISORS & | ) | |
| TRUST COMPANY d/b/a GERMAN AMERICAN | ) | |
| INVESTMENT SERVICES, PRIMEVEST FINANCIAL | ) | |
| SERVICES, INC., and JEFFERY W. TOOLEY, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 19A01-1110-PL-428 |
| | ) | |
| DENNIS M. REED, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DUBOIS CIRCUIT COURT
The Honorable William E. Weikert, Judge
Cause No. 19C01-0904-PL-172

**June 22, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

German American Financial Advisors & Trust Company d/b/a German American Investment Services ("GAFA"), PrimeVest Financial Services, Inc. ("PrimeVest"), and Jeffrey W. Tooley (collectively "Appellants") appeal the trial court's denial of their second motion to compel arbitration of Dennis M. Reed's claims against them. Appellants present the following issues for our review:

1. Whether the trial court erred when it denied their motion to compel arbitration.

2. Whether, assuming the trial court erred when it denied the motion to compel arbitration, Reed can be compelled to arbitrate his claims against GAFA.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On March 13, 2003, Tooley, an employee of GAFA and PrimeVest,[1] assisted Reed in opening an IRA account with PrimeVest. Reed filled out a document entitled "IRA New Account Application" ("2003 application") on that date, and the following language appeared directly above Reed's signature:

> I have read, understand and agree to the Important Disclosures and the Customer Agreement that are a part of this New Account Application packet, as well as the separate Privacy Policy.
>
> I AM AWARE THAT SECTION 20 OF THE CUSTOMER AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE DISPUTES.

---

[1] PrimeVest is a "registered securities broker/dealer" and had a "commission sharing agreement" with GAFA at all times relevant to this appeal. Appellant's App. at 27. On appeal, the parties provide no further information regarding the relationship between PrimeVest and GAFA.

Appellants' App. at 60. And Section 20 of the Customer Agreement incorporated by reference in the application provided in relevant part that Reed agreed that "ANY DISPUTE BETWEEN PRIMEVEST AND [REED] ARISING OUT OF THIS AGREEMENT SHALL BE SUBMITTED TO ARBITRATION[.]" Id. at 48.

On April 19, 2006, Tooley advised Reed that he should "roll over" his existing IRA accounts into a variable rate annuity, which Reed did. Id. at 12.[2] Tooley told Reed that the return on that investment after three years would be approximately $100,000. And Tooley stated that Reed would be able to withdraw the full amount from the account, without penalties, at that time. But when Reed sought to withdraw all of the funds from the annuity in 2009, after Tooley had left his employment with GAFA, Frederick Mattingly, a GAFA employee, informed Reed that he "would only be able to withdraw a portion of the account without incurring significant penalties." Id. at 13.

On April 15, 2009, Reed filed a complaint against Appellants alleging that they: violated the Indiana Uniform Securities Act; committed fraud; committed constructive fraud; were negligent; and breached their fiduciary duty. On June 10, Appellants filed their first motion to compel arbitration. In support of that motion, Appellants submitted the following: a copy of a new account application Reed had signed on March 11, 2008 ("2008 application");[3] and an affidavit executed by Andrew Krempp, the vice president of GAFA. In support of his response in opposition to the motion to compel arbitration,

---

[2] Reed's complaint alleges facts that Appellants dispute. For purposes of this appeal, we need not resolve the factual disputes. For ease of discussion, we set out the basic facts as set out in Reed's complaint.

[3] Reed had signed a new account application in 2003, but Tooley asked him to sign another application in 2008.

Reed argued in part that "the clear language of the New Account Application's arbitration clause shows it is prospective only, not retroactive, and therefore does not apply to the allegations of this lawsuit." Appellee's App. at 32. In particular, Reed signed the 2008 new account application approximately two years after Tooley had advised Reed to purchase the annuity, which was the subject matter of the lawsuit.

On July 23, 2009, Appellants filed their Reply in Support of Motion to Compel Arbitration, and they attached as Exhibit I the 2003 application signed by Reed. In addition, Appellants included a copy of the "Customer Agreement" incorporated by reference in the new account application. Appellants argued that by signing the 2008 new account application, Reed "ratified" his 2003 agreement to arbitrate. Id. at 45.

After deposing Krempp, Reed filed a "Surreply in Opposition to Motion to Compel Arbitration and Motion for Sanction Against Defendants of Denial of Their Motion to Compel Arbitration Based on Defendant's Submission of False Affidavits to the Court in Support of that Motion." In deposing Krempp, Reed had learned that neither Krempp nor PrimeVest had maintained a complete copy of Reed's new account applications in their files. In particular, while the signature page of each application was maintained in the files, a copy of the Customer Agreement incorporated by reference in those applications was not kept in Reed's files. And Krempp admitted during his deposition that the copies of the Customer Agreement submitted to the trial court in support of their motion to compel arbitration and reply in support of motion to compel arbitration were not the correct versions of the Agreement.[4] In other words, Appellants

---

[4] PrimeVest modified the terms of the Customer Agreement periodically over the years.

had not yet produced an accurate copy of the document purporting to contain an arbitration clause. And when Krempp submitted his affidavit identifying the attached Customer Agreement as the one that was incorporated by reference in the application Reed had signed, Krempp had been mistaken. Following a hearing, the trial court denied Appellants' motion to compel arbitration and denied Reed's motion for sanctions.

On December 4, 2009, PrimeVest and Tooley filed a second motion to compel arbitration, and, on November 12, 2010, GAFA joined that motion.[5] In support, Appellants submitted the affidavits of Tooley; Mark Stieve, President and CEO of GAFA at all times relevant to Reed's complaint; and Kimberly Holweger, Director of Operations of PrimeVest, as well as "a true and correct copy of the IRA New Account Application (the "Application") executed by Dennis M. Reed ("Reed") dated March 13, 2003, with attached Customer Agreement (the "Agreement") in which account, in 2006, Mr. Reed purchased the John Hancock annuity at issue in this litigation." Appellants' App. at 42. Section 20 of the Customer Agreement provided that "any dispute between PrimeVest and [Reed] arising out of this agreement shall be submitted to arbitration[.]" Id. at 48.

In his response in opposition to that motion, Reed argued in relevant part:

> Defendants now want to convince the Court that they have finally cobbled together the correct document [containing the arbitration clause]. Nevertheless, one of their current affiants, Kimberly Holweger, the Director of Operations of PrimeVest Financial Solutions has been forced to admit "under the PrimeVest record retention policy, only the account application form is filmed and retained as a film business record." PrimeVest does not retain the customer agreements that their clients review prior to signing the account application form. Therefore, how can Defendants bear their burden of proving that Jeff Tooley had Denny Reed sign an account application over seven years ago that had attached to it an arbitration agreement when

---

[5] GAFA was delayed in filing its motion to compel arbitration due to initial confusion as to whether it was a properly named party in Reed's complaint.

5

no one kept copies of the documents that were actually attached to Denny's signature page?

In light of the fact that the Defendants filed two false affidavits earlier, why should any of us believe that they have now "got it right"? Furthermore, the Defendants have offered no evidence why the current affidavits they are submitting are any more accurate than the two earlier affidavits submitted by Andrew Krempp. Is it too much to ask that if the Defendants want to take away a client's constitutional right to a jury, they should at least be required to keep a complete, signed copy of any agreement requiring arbitration? How much weight can truly be given to the Defendants' new affidavits since none of us have any reliable way of actually knowing what if any forms were attached to the signature pages of the application that Denny signed seven years ago? Thus far, the Defendants have kept guessing as to the wrong documents because of its incredibly poor business decision of not keeping copies!

Appellants' App. at 127-28. The trial court denied the second motion to compel arbitration. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Motion to Compel

Appellants first contend that the trial court erred when it denied their second motion to compel arbitration. In Williams v. Orentlicher, 939 N.E.2d 663, 667-68 (Ind. Ct. App. 2010), we set out the applicable standard of review:

The trial court's denial of a motion to compel arbitration is reviewed de novo. The party seeking to compel arbitration must demonstrate the existence of an enforceable arbitration agreement and that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. Whether the parties agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent. Courts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of parties. Thus, imposing on parties a policy favoring arbitration before determining whether they agreed to arbitrate could frustrate their intent and freedom to

6

contract. We will decide whether the dispute, on its face, is covered by the language of the arbitration provision. In doing so, we will apply ordinary contract principles governed by state law. If we determine that the parties have agreed to arbitrate, Indiana policy favors arbitration.

Med. Realty Assocs., LLC v. D.A. Dodd, Inc., 928 N.E.2d 871, 874 (Ind. Ct. App. 2010) (quotations and citations omitted). Further, when construing arbitration agreements, "every doubt is to be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." Bielfeldt v. Nims, 805 N.E.2d 415, 418 (Ind. Ct. App. 2004) (quotations omitted), trans. denied.

Here, Appellants maintain that they have satisfied their burden to show (1) the existence of an enforceable arbitration agreement and (2) that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. See id. Thus, they contend the trial court erred when it denied their second motion to compel arbitration. Indeed, our review of the record shows that when Reed signed the 2003 application, he agreed to arbitrate "any dispute" with PrimeVest arising out of their agreement. Appellants' App. at 48.

But Reed asserts that Appellants "have not demonstrated the existence of an enforceable agreement." Brief of Appellee at 10. In particular, Reed points out that the evidence shows that: neither Krempp nor PrimeVest retained a copy of the Customer Agreement with Reed's files; the Customer Agreement has been altered "dozens of times" over the years; and "this is the [Appellants'] fourth attempt" to provide an accurate copy of the relevant Customer Agreement. Id. at 10-11. Reed maintains that the version of the Customer Agreement submitted with Appellants' second motion to compel arbitration "has insufficient indicia of reliability and trustworthiness" and cannot,

7

therefore, support a finding that the parties had a valid arbitration agreement. Id. at 12.[6] In essence, Reed urges us to hold that, because Appellants had previously provided the trial court with incorrect versions of the Customer Agreement and had provided false testimony in affidavits submitted to the court, Appellants have not met their burden to prove the existence of an enforceable arbitration agreement.

We are not persuaded that Appellants' failure to provide an accurate copy of the Customer Agreement prior to the filing of their second motion to compel arbitration has any bearing on the admissibility of the evidence submitted in support of that motion. Indeed, while the previous versions of the Customer Agreement submitted by Appellants were proven to be incorrect versions of the parties' agreement, the version submitted with their second motion to compel arbitration has significant indicia of reliability. The copies of both the 2003 application signature page and the Customer Agreement submitted with the second motion to compel arbitration include the same copyright notice: "© 1996 Bankers Systems, Inc., St. Cloud, MN Form IRA-PRIME 6/1/2002."[7] Appellants' App. at 47-48. Further, the signature page refers to the arbitration clause in "SECTION 20" of the Customer Agreement, and Section 20 of the attached Customer Agreement does, indeed, contain an arbitration clause.[8] Id.

---

[6] Reed also argues that Appellants have not presented admissible evidence of an arbitration agreement to support their motion to compel because, Reed alleges, the customer agreement is hearsay. But Reed makes this argument for the first time on appeal. As such, the issue is waived. See Grathwohl v. Garrity, 871 N.E.2d 297, 302 (Ind. Ct. App. 2007) ("If a party does not present an issue or argument to the trial court, appellate review of the issue or argument is waived.").

[7] In contrast, the version of the Customer Agreement Appellants submitted with their first motion to compel arbitration indicated a 2007 copyright notice.

[8] Prior versions of the Customer Agreement submitted by Appellants contained an arbitration clause in Section 21 instead of Section 20.

8

Further, each version of the Customer Agreement Appellants submitted to the trial court contains the same essential terms pertaining to arbitration. It is well settled that "only essential terms need be included in order to render a contract enforceable." Wolvos v. Meyer, 668 N.E.2d 671, 676 (Ind. 1996). " 'All that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom.' " Id. (quoting Johnson v. Sprague, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993)). Here, Appellants submitted three different versions of the Customer Agreement to the trial court.[9] But each of those versions contains the same essential terms regarding arbitration, namely, an agreement to arbitrate "any dispute between me and you arising out of this agreement."[10] Appellee's App. at 7, 54; Appellants' App. at 48. And while the arbitration clauses are inconsistent regarding which entity shall conduct the arbitration, FINRA Dispute Resolution or NASD Dispute Resolution, all three versions are consistent in naming the American Arbitration Association as the entity that shall conduct arbitration if the named entity "is not available for the dispute." Id.

Reed does not outright contend on appeal that there is no valid arbitration agreement. Instead, he contends that Appellants have not proven that they have submitted a valid copy of the agreement to the trial court. Again, we review the trial court's denial of the second motion to compel arbitration de novo. Williams, 939 N.E.2d at 667-68. And we hold that Appellants have sustained their burden to show the

---

[9] According to Reed, Appellants provided a fourth version of the customer agreement to Reed during Krempp's deposition.

[10] For clarity, we note that the first two versions submitted by Appellants use the words "you and me," but the third version submitted to the trial court uses the words "me and PRIMEVEST."

9

existence of an enforceable arbitration agreement and that the disputed matter is the type of claim that is intended to be arbitrated under the agreement.[11]

## Issue Two: GAFA

Appellants next contend that Reed is required to arbitrate his claims against GAFA, even though GAFA was not a party to the arbitration agreement. In support of that contention, Appellants rely on precedent holding that third-party beneficiaries to an arbitration agreement may compel arbitration. See Dunmire v. Schneider, 481 F.3d 465 (7th Cir. 2007). But we do not find support for a determination that GAFA is a third-party beneficiary to the Customer Agreement in this case. We do, however, hold that the principles of equitable estoppel apply here.

In Williams v. Orentlicher, 939 N.E.2d 663, 670 (Ind. Ct. App. 2010), this court acknowledged case law from other jurisdictions holding that, under the doctrine of equitable estoppel, a nonsignatory to an agreement may bind a signatory to an arbitration clause.[12] (Citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); Sunkist Soft Drinks v. Sunkist Growers, Inc., 10 F.3d 753, 756-57 (11th Cir. 1993), cert. denied, 513 U.S. 869 (1994); Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836 (7th Cir. 1981). In MS Dealer, the United States Court of Appeals for the Eleventh Circuit stated:

---

[11] To the extent that Reed contends that Appellants' record-keeping practices prove that they are incapable of producing an accurate copy of the relevant customer agreement, again, we are not persuaded. The Customer Agreement was incorporated by reference in the new account application signed by Reed. Appellants' difficulty in finding the appropriate version of the Customer Agreement is explained by the fact that the terms of the Agreement have changed several times over the years. Regardless, the arbitration clauses contained in each version contain the same essential terms.

[12] In Williams, a signatory was attempting to bind a nonsignatory to an arbitration agreement, the converse of the circumstances in our case. And we held that a signatory may not use equitable estoppel to compel arbitration against a nonsignatory. Williams, 939 N.E.2d at 670.

10

Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

177 F.3d at 947 (citations omitted).

Here, Reed admitted in his brief in opposition to the motion to compel arbitration that his claims against each of the Appellants "will require the presentation of the same evidence." Appellants' App. at 9. And Reed alleges joint and several liability against the Appellants, with his claims against GAFA stemming from Tooley's conduct and the contractual relationship between Reed and PrimeVest. Accordingly, Reed's claims against GAFA both "arise out of and relate directly to the written agreement" between Reed and PrimeVest, and those claims allege "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." See MS Dealer, 177 F.3d at 947. We adopt the reasoning set out in MS Dealer and hold that Reed must arbitrate his claims against GAFA under the doctrine of equitable estoppel.[13]

---

[13] Finally, Appellants address two other issues raised by Reed to the trial court, namely, whether (1) their second motion to compel was a repetitive motion and "should be discouraged"; and (2) the arbitration provision is unenforceable because the chosen forum, the National Association of Securities Dealers, is defunct. But Reed does not present argument on either of those issues in his brief on appeal,

**Conclusion**

Again, we hold that Appellants have satisfied their burden to show (1) the existence of an enforceable arbitration agreement and (2) that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. While we are unimpressed with Appellants' failure to locate the proper documentation to support their first motion to compel, they ultimately met their burden on the second motion to compel arbitration, which is the only issue before us, and Reed has not offered any evidence to refute the evidence pointing to a valid arbitration agreement. Further, under the doctrine of equitable estoppel, Reed is required to arbitrate his claims against GAFA, as well as against PrimeVest and Tooley. We reverse and remand with instructions to the trial court to enforce the parties' arbitration agreement on Reed's claims against each of the Appellants.

Reversed and remanded with instructions.

FRIEDLANDER, J., concurs.

BARNES, J., concurs in part and dissents in part with separate opinion.

---

so we do not address them. We note, however, that in <u>Lesjak v. New England Financial</u>, 879 N.E.2d 1129, 1130 n.1 (Ind. Ct. App. 2008), this court acknowledged that the NASD "consolidated its operations and merged with" FINRA in 2007. And other jurisdictions have "continue[d] to enforce NASD arbitration clauses through FINRA arbitration and interpret and enforce NASD's rules as applicable to FINRA." <u>In re Stanford Group Company</u>, 273 S.W.3d 807, 810 n.1 (Tex. App. 2008); <u>see</u> <u>also</u> <u>Morgan Stanley & Co., Inc. v. Feeley</u>, 906 N.Y.S.2d 13, 14 (N.Y. App. Div. 2010).

# IN THE
# COURT OF APPEALS OF INDIANA

GERMAN AMERICAN FINANCIAL ADVISORS )
& TRUST COMPANY d/b/a GERMAN )
AMERICAN INVESTMENT SERVICES, )
PRIMEVEST FINANCIAL SERVICES, INC., and )
JEFFERY W. TOOLEY, )
  )
    Appellants-Plaintiffs, )
  )
       vs. )    No. 19A01-1110-PL-428
  )
DENNIS M. REED, )
  )
    Appellee-Plaintiff. )

**BARNES, Judge, concurring in part and dissenting in part**

I concur with the majority's resolution of Issue One in this appeal. I respectfully dissent, however, from its conclusion in Issue Two that GAFA may compel Reed to submit his claims against it to arbitration.

First, Indiana law is that parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate, and arbitration agreements will not be extended by construction or implication to cover any other matters. Showboat Marina Casino P'ship v. Tonn & Blank Constr., 790 N.E.2d 595, 597-98 (Ind. Ct. App. 2003).

13

Here, I believe the majority is elasticizing the plain and unambiguous language of the arbitration agreement by allowing GAFA to insist on arbitration when GAFA was not a named party to the arbitration agreement—only PrimeVest and Reed were named. I might also add that, although there are of course important public policy reasons for enforcing arbitration agreements, there are vital public policy concerns, enshrined in the Indiana Constitution, which guarantee open courts, remedies by due course of law, and civil jury trials. See Ind. Const. Art. 1, §§ 13 & 20. A waiver of such constitutional rights must be clear and unmistakable.

There is an Indiana statute governing the creation of arbitration agreements stating, "If the parties to such an agreement stipulate in writing, the agreement may be enforced by designated third persons, who shall in such instances have the same rights as a party under this chapter."[14] Ind. Code § 34-57-2-1(a). There is no such written stipulation in this case regarding third parties having the right to enforce the arbitration agreement. I believe there is a legitimate inference to be made that, in enacting this statute, the legislature did not contemplate that non-signatory third parties to a contract should be allowed to enforce an arbitration agreement unless there was such a stipulation.

The MS Dealer case relied upon by the majority holds that, because of "equitable estoppel," it was permitting a non-signatory to an arbitration agreement to enforce it against a signatory to the agreement. MS Dealer, 177 F.3d at 947. This does not seem compatible with the standard Indiana definition of "equitable estoppel," which requires a party to show its (1) lack of knowledge and of the means of knowledge as to the facts in

---

[14] This sentence is an addition to the Uniform Arbitration Act of 1956 on which the Indiana statute is based, and which sentence apparently has not been adopted by any other state.

14

question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially. Town of New Chicago v. City of Lake Station ex rel. Lake Station Sanitary Dist., 939 N.E.2d 638, 653 (Ind. Ct. App. 2010), trans. denied. Here, most importantly, I see no indication whatsoever that Reed misled GAFA into doing anything, based on a representation that he would agree to arbitrate any dispute with GAFA, which I think GAFA would have to prove in order to show "equitable estoppel" under established Indiana law. This strained definition of "equitable estoppel" is one of the main reasons that our colleagues on the Appellate Court of Illinois have refused to apply MS Dealer's holding in that state. See Ervin v. Nokia, Inc., 812 N.E.2d 534, 542-43 (Ill. Ct. App. 2004), app. denied.[15]

Regardless of the "equitable estoppel" label, MS Dealer and the majority appear to be concerned that a party to a contract with an arbitration clause should not be able to raise claims related to the contract against a non-party while avoiding the contract's arbitration clause. It is not Reed's fault that the arbitration clause in this case explicitly refers only to PrimeVest as the party against whom claims must be arbitrated. This clearly was a form document that PrimeVest wrote. Reed has not acted inequitably in this regard. Reed also is not suing GAFA directly for breach of contract; indeed, it does not appear that Reed could enforce any contractual rights or remedies against GAFA, nor could GAFA against Reed. Finally, there is no argument by GAFA or evidence that it is a principal or agent of PrimeVest, or that it is merely a corporate alter ego of PrimeVest, or a successor in interest to PrimeVest, or that it is a third-party beneficiary of the

---

[15] Illinois's definition of "equitable estoppel" is similar to Indiana's, in that it requires "prejudicial reliance" by one party upon representations made by another party. See Ervin, 812 N.E.2d at 541.

15

PrimeVest-Reed contract.[16]   Particularly in the absence of any such argument and evidence, and in light of my views stated above, I would hold that GAFA is not entitled to compel Reed to submit his claims against it to arbitration.

---

[16] GAFA cites cases holding that agents of a signatory to an arbitration agreement may enforce that agreement.  See Dunmire v. Schneider, 481 F.3d 465, 467 (7th Cir. 2007).  However, it makes no argument that it is in fact an agent or principal of PrimeVest.