

**FILED**

Jul 21 2016, 6:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kirk R. Jocham
Doehrman Buba
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Norris Cunningham
Angela M. Fox
Hall, Render, Killian, Heath &
Lyman, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maureen Maynard, as Personal Representative of the Estate of Frank Cavazos, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Golden Living in its own capacity and d/b/a Golden Living Center–Sycamore, et al., <br><br> and <br><br> Anonymous, M.D., and Anonymous Primary Care, Interested Parties, <br><br> *Appellees-Defendants* | July 21, 2016 <br><br> Court of Appeals Case No. 34A04-1512-CT-2153 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable Douglas A. Tate, Judge <br><br> Trial Court Cause No. 34D03-1407-CT-12 |

**Mathias, Judge.**

Maureen Maynard ("Maynard") as personal representative of the Estate of Frank Cavazos ("Cavazos") filed a complaint in Howard Superior Court alleging negligence and breach of contract by GGNSC Kokomo LLC d/b/a Golden LivingCenter-Sycamore Village and Hendricks Regional Health d/b/a Golden LivingCenter-Sycamore Village ("Golden Living"). Golden Living filed a motion to dismiss, demand for arbitration, and motion to compel arbitration, which the trial court later granted after a hearing on the matter was held. Maynard now brings this interlocutory appeal and argues that the trial court erred in granting Golden Living's motion to dismiss, demand for arbitration, and motion to compel arbitration.

We affirm.

## Facts and Procedural History

On or around July 18, 2011, Cavazos became a resident of Golden Living after he executed an admission agreement. The agreement states in pertinent part:

### I. Preamble

This Admission Agreement is a legally binding contract that defines the rights and obligations of each person (or party) who signs it. Please read this Agreement carefully before you sign it. If you have any questions, please discuss them with LivingCenter staff before you sign the Agreement. You are encouraged to have this Agreement reviewed by your attorney, or by any other advisor of your choice before you sign it.

If you are able to do so, you must sign this Agreement in order to be admitted to this LivingCenter. If you are not able to sign this

Agreement, your Legal Representative, who has been given authority by you to admit you to the LivingCenter, must sign it on your behalf. This Agreement will become effective on the day you are admitted to the LivingCenter regardless of the date you and/or your Legal Representative signs it. You are not required to sign any other document as a condition of admission to the LivingCenter.

Appellant's App. p. 29.

[4]     Cavazos also signed an alternative dispute resolution agreement[1] ("arbitration agreement") at the same time that provides in relevant part:

**THIS AGREEMENT IS <u>NOT</u> A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILTY.**

**II. Voluntary Agreement to Participate in ADR**

The parties agree that any disputes covered by this Agreement ("Covered Disputes") that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration. The parties to this Agreement acknowledge and agree that upon execution by Resident, this Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. The relief available to the Parties under this Agreement shall not exceed that which otherwise would be

---

[1] Maynard also signed the admission agreement as Cavazos's personal representative. It is unclear why Maynard did not also sign the arbitration agreement at issue. Although, the record does not reflect that Cavazos was unable to sign either agreement on his own behalf.

available to them in a court action based on the same facts and legal theories under the applicable federal, state or local law.

**THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

\*\*\*

## VIII. Proof of Agreement

The Parties agree and stipulate that the original of this Agreement, including the signature page, may be scanned and stored in a computer database or similar device, and that any printout or other output readable by sight, the reproduction of which is shown accurately to to reproduce the original of this document, may be used for any purpose just as if it were the original, including proof of the content of the original writing. This agreement shall be binding upon the Facility when signed by or on behalf of the Resident, regardless of whether this Agreement has been signed by a Facility representative.

### IX. Resident's Understanding

The Resident understands that he or she has the right to seek advice of legal counsel concerning this Agreement; that his or her signing of this Agreement is not a condition of admission to or residence in the Facility; that he or she may revoke this Agreement by sending written notice to the Facility within thirty (30) days of signing it; and that this Agreement, if not revoked within that time frame, shall remain in effect for all care and services rendered to the Resident at or by the Facility regardless of whether the Resident is subsequently discharged and readmitted to the Facility without renewing, ratifying, or acknowledging this Agreement.

Appellant's App. pp. 36, 38. Cavazos was given the original signed agreements, and Golden Living retained a copy of the signature pages for the admission agreement and the arbitration agreement. Cavazos later died on May 17, 2013.

On February 17, 2014, Maynard filed a complaint against Golden Living and others, alleging that on or around July 18, 2011, Cavazos was a resident of Golden Living and that it was responsible for his care. In her complaint, Maynard asserted that Golden Living's skilled agents, employees, and representatives, while acting in their scope and agency with Golden Living, failed to comply with the applicable standards of care. She further stated that Golden Living breached its contractual duty to provide Cavazos with adequate medical, nursing, and custodial care along with a safe and sanitary living condition in a dignified and respectful manner. Maynard argued that this negligence and breach of contract caused Cavazos to suffer permanent injuries

and disabilities, great pain, emotional distress, mental trauma, and ultimately death.

[6]     Golden Living filed a motion to dismiss, demand for arbitration, and motion to compel arbitration ("motion to compel arbitration") on November 21, 2014, alleging that parties to this matter agreed to resolve any claims by binding arbitration pursuant to the arbitration agreement. To support its motion, Golden Living relied on a blank arbitration agreement with accompanying signature page. On February 12, 2015, Maynard filed her response to Golden Living's motion to compel arbitration, alleging that Golden Living failed to meet its burden that an enforceable arbitration agreement existed. The trial court held a hearing on the motion to compel arbitration on June 9, 2015. At the end of the hearing, the court determined that it would not rule on the matter until Golden Living had an opportunity to depose its former Marketing Director, Joni Lott ("Lott").

[7]     On August 5, 2015, Golden Living deposed Lott. At the deposition, Lott explained that she helped Cavazos with his admission into Golden Living. Lott presented Cavazos with the admission agreement and arbitration agreement, which he signed. Maynard also signed the admission agreement in Lott's presence, but Lott could not recall why Maynard did not sign the arbitration agreement. Before Cavazos signed the arbitration agreement, Lott told him that he could take it home if he wanted to review the agreement further. Lott noted that at the time Cavazos signed the agreement, he was alert and oriented, able to speak to her and answer questions, and appeared to understand what she was

saying.[2] Appellant's App. p. 112. After the agreements were executed, Lott gave Cavazos the original documents and kept the signature pages to give to the office based on routine procedure.

[8] Golden Living subsequently filed its supplemental brief in support of its motion to compel arbitration on September 8, 2015. Maynard responded the next day with her supplemental response in opposition to Golden Living's motion to compel arbitration. On October 26, 2015, the trial court granted Golden Living's motion to compel arbitration. In its order the court concluded:

> [A]s incredulous as it was for Golden [Living] to not retain a copy of it's[sic] own admission and alternative dispute resolution agreement, there is sufficient evidence secondary evidence in addition to the signature page for the court to find that there was an enforceable arbitration agreement.

Appellant's App. p. 19.

[9] Maynard filed a motion for certification of appeal of interlocutory order on November 5, 2015. The trial court granted the motion seven days later. On December 7, 2015, Maynard filed a motion asking this court to accept interlocutory jurisdiction, and our court granted the motion on January 19, 2016. This appeal now ensues.

---

[2] Maynard fails to raise lack of capacity to contract as a defense in her brief. As a result, we conclude that Cavazos's competence was not contested here. *See infra* pp. 12-13.

## Standard of Review

[10] Maynard argues that the trial court erred in granting Golden Living's motion to compel arbitration. Written agreements to submit to arbitration are valid and enforceable, except where grounds exist for revocation of any contract. Ind. Code § 34-57-2-1(a). Arbitration is initiated by written notice by either party. Ind. Code § 34-57-2-2. If a party seeks arbitration, and the other party refuses to arbitrate, the party seeking arbitration may move a trial court to compel arbitration, and, where arbitration is ordered, the underlying action at the trial court must be stayed. Ind. Code § 34-57-2-3(a), (d).

[11] Our review of a trial court's order compelling arbitration is de novo. *Brumley v. Commonwealth Bus. College Educ. Corp.*, 945 N.E.2d 770, 775 (Ind. Ct. App. 2011). Both Indiana and federal law recognize a strong public policy favoring enforcement of arbitration agreements. *Safety Nat. Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005), *trans. denied*. A party seeking to compel arbitration must satisfy two elements. *Id.* First, the party must demonstrate that there is an enforceable agreement to arbitrate the dispute. *Id.* Second, the party must prove the disputed matter is the type of claim that the parties agreed to arbitrate.[3] *Id.*

## Discussion and Decision

---

[3] Maynard only contends that the arbitration agreement is unenforceable, so we will only address the argument presented before us on appeal.

*A. Whether the Agreement is Enforceable*

Maynard specifically contends that the arbitration agreement is ambiguous and therefore unenforceable because the blank agreement submitted by Golden Living in its motion to compel arbitration does not identify the parties to the agreement.

The goal of contract interpretation is to determine the intent of the parties when they made the agreement. *Citimortgage, Inc. v. Barabas*, 975 N.E. 805, 813 (Ind. 2012), *reh'g denied*. "We begin with the plain language of the contract, reading it in context, and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* "[C]onstruction of the terms of a written contract is a pure question of law for the court, reviewed de novo." *Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002).

"A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Barabas*, 975 N.E.2d at 813. If the language is unambiguous, we may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument. *Bd. of Commr's of Delaware Cnty. v. Evans*, 979 N.E.2d 1042, 1046 (Ind. Ct. App. 2012). However, if the language is ambiguous, we will construe the terms to determine and give effect to the intent of the parties when they entered into the contract. *Barabas*, 975 N.E.2d at 813.

[15] Courts may properly consider all relevant evidence to resolve the ambiguity. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006). "Extrinsic evidence is relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement. *CWE Concrete Const., Inc. v. First Nat'l Bank*, 814 N.E.2d 720, 724 (Ind. Ct. App. 2004), *trans. denied*. If a contract is ambiguous, it should be construed against the party who furnished and drafted the agreement. *Keithley's Auction Serv. v. Children of Jesse Wright*, 579 N.E.2d 657, 659 (Ind. Ct. App. 1991).

[16] Because Maynard asserts that the parties to the agreement were not identified and as such made the arbitration agreement ambiguous, we consider the extrinsic evidence to resolve the ambiguity. Neither Golden Living nor Maynard produced the original admission agreement or arbitration agreement during the course of these proceedings. Under Indiana Rule of Evidence 1004 (a), an original is not required and other evidence of the content of a writing, recording, or photograph is admissible if all originals are lost or destroyed, and not by the proponent acting in bad faith.

[17] Here, Golden Living submitted a blank copy of the admission agreement and the arbitration agreement along with the signature pages from both agreements. Appellant's App. pp. 26-34; 36-42. Lott testified that Cavazos executed both agreements, while Maynard only signed the admission agreement. Appellant's App. pp. 35, 50. Lott explained that after a resident signed the documents, she

would make a copy of the signature pages for Golden Living and give the original copy to the resident.

[18] Although the portion of the arbitration agreement identifying the parties was blank, the agreement was a standard form used by Golden Living in each new resident admission. At the bottom of the agreement on each page, the document was labeled, "Golden Living Centers: Alternative Dispute Resolution Agreement (rev. 01/10)." *See* Appellant's App. pp. 43, 47. The signature forms submitted by Golden Living contain the same language and match the terms and conditions outlined in the blank arbitration agreement. Further, even though Cavazos and Golden Living were not listed as the "Resident" and "Facility" lines of the agreement, Lott's deposition testimony and Maynard's complaint establish that Cavazos and Maynard were entering into a contract with Golden Living, which agreed to provide certain services to Cavazos. It is not contested that Cavazos was a resident of the Golden Living facility.

[19] Golden Living inexplicably failed to retain a copy of the arbitration agreement, but the trial court concluded that sufficient extrinsic evidence existed to conclude that an enforceable agreement exists. We agree and conclude that the extrinsic evidence in the record resolves the ambiguity surrounding the parties to the arbitration agreement. *See Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 73 (Ind. Ct. App. 2014). We therefore conclude that the trial court did not err in granting Golden Living's motion to compel arbitration after determining that the arbitration agreement was enforceable.

*B. Whether the Arbitration Agreement is Voidable*

Further, Maynard asserts that even if the arbitration agreement is enforceable, a defense to the contract exists because Cavazos was fraudulently induced to execute the agreement by Lott. Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter a contract. *Brumley*, 945 N.E.2d at 776. If a party's manifestation of assent is induced either by a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient. *Id.* Fraudulent inducement does not prevent the formation of a contract altogether, but it does render the contract "voidable." *Id.*

The elements of fraud are: (1) a material representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused the injury to the complaining party. *Tru-Cal v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 44-45 (Ind. Ct. App. 2009).

Here, Maynard does not argue that Lott made a false material representation of fact with an intent to deceive Cavazos. Rather, she argues that Lott is not an attorney and does not understand the legal ramifications of signing an alternative dispute resolution agreement. However, the record reflects that Lott encouraged Cavazos to take the agreement with him to review and the arbitration agreement conspicuously stated that signing the document was not a

condition of admission and could be revoked within thirty days. Even if Lott misunderstood the legal ramifications of executing an arbitration agreement, as Maynard argues, the requisite intent required to establish fraud does not exist here. Therefore, we cannot conclude that fraudulent inducement is a valid defense to deem the arbitration agreement voidable.

[23] We acknowledge that buried in her fraudulent inducement argument, Maynard notes that Lott testified that it was possible Cavazos did not understand what he was signing. When determining if a person has the mental capacity to enter into a contact, the test is whether the person was able to understand in a reasonable manner the nature and effect of his act on the date of the agreement. *Wilcox Mfg. Group, Inc. v. Marketing Servs. Of Indiana, Inc.*, 832 N.E.2d 559, 563 (Ind. Ct. App. 2005). Because lack of capacity to contract is Maynard's defense to the arbitration agreement, it is her burden to present evidence that Cavazos was incompetent to contract. However, Maynard fails to raise lack of capacity to contract as a defense and presents no evidence that Cavazos was incompetent on July 18, 2011. Therefore, Cavazos's competence was not contested here.

[24] Furthermore, while Maynard is designated as the personal representative of Cavazos's estate, the record does not reflect that she was Cavazos's guardian at the time the admission agreement was signed. It is reasonable to believe that Golden Living's and Maynard's common purpose in Maynard's execution of the admission agreement was to guarantee payment for Cavazos's nursing care if his estate became insolvent. As such, Maynard's right to bring suit is derivative of Cavazos's. As previously mentioned, Cavazos signed both the

admission agreement and arbitration agreement, so as personal representative of his estate, Maynard is bound by the arbitration agreement. It was Maynard's burden to present evidence that Cavazos was incompetent to contract and/or that she was his legal representative at the time the contracts were signed. Because of this failure, we conclude that in her derivative claim against Golden Living, she is bound by the agreements Cavazos signed as a presumed competent individual.

[25] For all of these reasons, we conclude that because the arbitration agreement is enforceable, Maynard has failed to establish a defense that renders the agreement voidable, and since Maynard was not Cavazos's legal personal representative at the time the admission and arbitration agreements were signed, the trial court did not err in granting Golden Living's motion to compel arbitration.

[26] Affirmed.

Vaidik, C.J., and Barnes, J., concur.