

FILED

Mar 17 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ashley N. Hadler
Garau Germano, P.C.
Indianapolis, Indiana

ATTORNEY FOR *AMICUS CURIAE*
INDIANA TRIAL LAWYERS
ASSOCIATION

James E. Stoltz
Gerling Law Offices, P.C.
Evansville, Indiana

ATTORNEYS FOR APPELLEES
CARMEL OPERATOR, LLC &
SPECTRUM RETIREMENT
COMMUNITIES, LLC

Rafael P. McLaughlin
Katherine M. Haire
Reminger Co., LPA
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
CERTIPHI SCREENING, INC.

Chad J. Kaldor
Peter T. Tschanz
Littler Mendelson, P.C.
Columbus, Ohio

ATTORNEYS FOR APPELLEE
MICHAEL DAMON SULLIVAN

David G. Field
Jeffrey M. Kraft
Schultz & Pogue, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jane Doe 1, as Legal Guardian
of the Person and Estate of Jane
Doe 2, an Incapacitated Adult,

*Appellant-Plaintiff,*

v.

Carmel Operator, LLC d/b/a
Carmel Senior Living, et al.,

*Appellees-Defendants.*

March 17, 2020

Court of Appeals Case No.
19A-CT-2191

Appeal from the Hamilton Superior
Court

The Honorable Michael A. Casati,
Judge

Trial Court Cause No.
29D01-1811-CT-11534

**Bailey, Judge.**

# Case Summary

Jane Doe I ("Guardian"), as legal guardian of the person and estate of Jane Doe II ("Resident"), an incapacitated adult, appeals the trial court order compelling arbitration of Resident's claims against Carmel Operator, LLC, d/b/a Carmel Senior Living ("CSL"), Spectrum Retirement Communities ("Spectrum"), Michael D. Sullivan ("Sullivan"), and Certiphi Screening, Inc. ("Certiphi").

We affirm.

# Issues

Guardian raises two issues on appeal which we restate as follows:

1.    Whether the trial court erred by enforcing the arbitration agreement and compelling arbitration of Resident's claims against CSL, Spectrum, and Sullivan[1] despite Guardian's claim that the agreement is unconscionable.

2.    Whether the trial court erred by enforcing the arbitration agreement and compelling arbitration of Resident's claims against Certiphi based upon equitable estoppel.

# Facts and Procedural History

Prior to June 1, 2018, seventy-seven-year-old Resident was a resident of Wellbrooke of Wabash, an assisted living facility located in Wabash, Indiana. On approximately May 1, 2018, Wellbrooke of Wabash advised Guardian that it could no longer care for Resident due to Resident's tendency to elope from the facility. Guardian was provided until the end of the month to find new accommodations for Resident.

On May 7, Guardian contacted CSL, and she visited the facility on May 8. Guardian informed CSL that she had also toured other facilities in search of a placement for Resident. Guardian authorized a nurse at CSL to assess Resident on or about May 16, 2018. The assessment revealed serious cognitive issues and memory impairment, and CSL was concerned that Resident would be at risk for elopement from its unsecured unit. Because Guardian did not want to

---

[1] Guardian does not challenge the applicability of the arbitration agreement to Spectrum and Sullivan as non-signatories; rather, she treats CSL, Spectrum, and Sullivan as one.

place Resident in a secured facility, CSL agreed to accept Resident into its unsecured unit on the conditions that Resident, upon arrival, had to tour the memory care unit and, if Resident attempted to elope, she would be transferred to that memory care unit. Guardian agreed to those terms.

[6] On May 23, 2018, Guardian went to CSL's facility, paid a deposit, and received a move-in packet. Resident's scheduled move-in date was June 4, 2018. On the morning of May 31, CSL e-mailed an Assisted Living and Memory Care Residency Agreement ("Residency Agreement") to Guardian. CSL requested that Guardian either come to CSL to execute the agreement or that she print, sign, and return it.

[7] Guardian subsequently contacted CSL and scheduled a meeting for 1:00 p.m. on June 1, 2018, in order to review and sign the Residency Agreement, among other things. Guardian was unable to make that appointment; however, at approximately 4:45 p.m. that day, she delivered a copy of the Residency Agreement that she had already executed, along with two lease checks, to a CSL move-in coordinator. At that time, CSL provided Guardian with a copy of the Residency Agreement that had been signed by Rita Shew ("Shew"), the Executive Director of CSL, and Guardian "was told to sign the Residency Agreement." App. Vol. III at 171.[2] At that time, Guardian also received the keys to Resident's apartment. CSL did not explain the Residency Agreement to

---

[2] All references to the appendices relate to Appellant's appendices unless otherwise specified.

Guardian, and Guardian did not ask CSL for any explanations of the Residency Agreement. On June 4, 2018, Shew signed the Residency Agreement that Guardian had signed and provided to CSL on June 1. Resident moved into CSL on June 4.

[8] The Residency Agreement was twenty-two pages long, exclusive of the table of contents and addenda. The agreement contained approximately sixty-one pages of addenda. Section III of the agreement stated in relevant part: "You may terminate this Residency Agreement at any time, with or without cause, by giving thirty (30) days prior written notice to the Community's Executive Director, or such other person as the Executive Director may designate …." Section V(J) of the agreement stated in relevant part: "This Residency Agreement shall be construed and enforced in accordance with the laws of the State in which the Community is located and shall be binding upon and inure to the benefit of the parties hereto …." App. V. II at 58. Section V(L) of the agreement stated, in relevant part:

> If the person signing this Residency Agreement is not the Resident, the Community both requires and relies upon the representation by the person that signs this Residency Agreement, as Legal Representative, that he or she has been authorized by the Resident to enter into and bind the Resident to each and every one of the terms and conditions of this Residency Agreement, both financial and non-financial, without any restriction whatsoever. This authorization expressly includes but is not limited to the authority to bind the Resident to the Binding Arbitration Agreement. …

*Id*. at 59.

Section VII of the Residency Agreement was entitled, in bold capital letters,

"**BINDING ARBITRATION AGREEMENT**" (Arbitration Agreement). *Id.*

at 63. The Arbitration Agreement stated, in relevant part:

> **THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. PLEASE READ IT CAREFULLY AND IN ITS ENTIRETY BEFORE SIGNING IT.**
>
> The parties wish to work together to resolve any disputes in a timely fashion and in a manner that they believe will minimize both of their legal costs. Therefore, in consideration of the mutual promises in this Agreement, the Community and the Resident hereby agree as follows:
>
> A. <u>What is Arbitration</u>?
>
> … In arbitration, the disputes are heard and decided by a private individual called an arbitrator. The disputes will not be heard or decided by a judge or jury under any circumstance. However, just as in a court case, each party can be represented by an attorney.
>
> B. <u>Disputes to be Arbitrated</u>
>
> Any and all claims or controversies involving the Community, Resident and/or Legal Representative arising out of or in any way relating to this Arbitration Agreement or any of the Resident's stays at the Community, including all disputes raised by the Community, Resident or Legal Representative regarding enforcement or interpretation of this Agreement, and including but not limited to all disputes involving questions of waiver,

unconscionability, voidability or arbitrability, whether arising out of State or Federal law, whether existing now or in the future, whether sounding in breach of contract, tort or breach of statutory duties (including, without limitation, claims based on personal injury or death or claim for unpaid Community charges), regardless of the basis for any duty or of the legal theories upon which the claim is asserted, shall be submitted to and resolved by binding arbitration. This includes claims against the Community, its employees, agents, officers, directors, any parent, subsidiary or affiliate of the Community.

C. Binding Nature of Arbitration

The decision rendered by the arbitrator shall be final and binding, … There shall be no appeal of the arbitrator's decision by either party. The decision of the arbitrator shall be binding on all parties to the arbitration, and all persons whose claim is derived through or on behalf of the Resident, including, but not limited to, any claims on behalf of any … guardian, … [or] legal representative … of the Resident. The parties agree and acknowledge that any award issued pursuant to an arbitration hearing shall not include any amount for exemplary or punitive damages.

D. Who Will Conduct Arbitration

* * *

In the event that a dispute arises, a written demand for arbitration shall be made by the person(s) (the "Claimant" or "Claimants") asserting that a dispute exists ….

* * *

… The Claimants and Respondents shall agree upon an
Arbitrator ….

* * *

The Arbitrator shall resolve all disputes between the Claimants
and Respondents, without any restriction whatsoever, as it is the
parties' intent to completely avoid the court system in such
matters.

* * *

E. Laws Governing Arbitration

The parties agree that the Community is engaged in interstate
commerce and that this Agreement to arbitrate disputes and the
arbitration shall be governed by the Federal Arbitration Act. If
for any reason there is a finding that the Federal Arbitration Act
cannot be applied to this Agreement, then the parties hereby
make it clear their intent that their disputes/claims be resolved
pursuant to the arbitration section of the Revised Code or such
similar statutes of the state in which the Community is located.

F. Confidentiality

You and Your Legal Representative and the Community agree to
keep all arbitration proceedings strictly confidential, …

G. Survival and Durability Provision

This Agreement shall survive the termination of, and changes to,
the Assisted Living Residency Agreement and Addenda and shall
apply to any of the Resident's admissions to the Community. If

any term, phrase, or portion thereof of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

*Id*. at 63-65 (emphasis original).

[10] At the end of the Arbitration Agreement, there is a line for the initials of the Resident, and Guardian initialed that line as follows: "*AG* (*Guardian*)." *Id*. at 65.

[11] The "**SIGNATURE PAGE FOR ASSISTED LIVING RESIDENCY AGREEMENT**" immediately follows the Arbitration Agreement. *Id*. at 66 (emphasis original). It states, in relevant part:

> The undersigned certifies that he/she has read this Assisted Living Residency Agreement and its Addenda or that the Residency Agreement and its Addenda have been fully explained to him/her, that he/she understands their contents, and has received a copy of the Residency Agreement and its Addenda and that he/she is the Resident, or a person authorized by the Resident or otherwise authorized to execute this Residency Agreement and its Addenda and accept all of the terms therein. …

*Id*. (emphasis added). Guardian signed that page and dated it June 1, 2018. Shew also signed the signature page as the "Community Representative," and dated it June 1, 2018. *Id*. The addenda A through S[3] follow the signature page,

---

[3] Addendum B states only that it is "intentionally deleted." *Id*. at 69.

and each addendum is dated June 1, 2018. Guardian and Shew signed each addendum.

[12] On November 30, 2018, Guardian filed a complaint for breach of contract and negligence against CSL, Spectrum,[4] and Sullivan, who was an employee of CSL. She alleged that, on or before August 7, 2018, Sullivan, while an employee of CSL, sexually abused Resident and that CSL/Spectrum should be held vicariously liable. On March 19, 2019, Guardian amended the complaint to add Certiphi as a defendant who contracted with CSL to do a criminal background check of Sullivan. The amended complaint alleged that CSL, Spectrum, and Certiphi are liable for negligently failing to uncover in a criminal background check Sullivan's prior Indiana convictions of a sex crime and murder.

[13] On January 25, 2019, CSL and Spectrum served Guardian with a Demand for Arbitration. On February 9, counsel for Guardian and Resident advised CSL that "the Arbitration Agreement is not valid and we will not agree to [CSL/Spectrum's] request to proceed with arbitration on that basis." App. Vol. II at 125. All defendants to the lawsuit subsequently moved the trial court to dismiss and/or stay the trial court proceedings and to compel arbitration. Guardian argued that the Arbitration Agreement is unconscionable, that the

---

[4] Spectrum is the management company of CSL.

trial court should find the Arbitration Agreement to be invalid, and that the dispute should remain before the trial court.

[14] Following a hearing on the motions, on August 20, 2019, the trial court issued an Order denying defendants' motions to dismiss but granting the defendants' motions to compel arbitration and stay proceedings. The August 20 order stated, in relevant part:

* * *

> The Court, in granting the Motions to Compel Arbitration, concludes that the Arbitration Agreement is a valid and enforceable contract to arbitrate the disputes that are the subject of the Plaintiffs' Amended Complaint. The Court further finds that the Arbitration Agreement clearly and unmistakably delegates matters of arbitrability and unconscionability to an arbitrator, including whether Plaintiffs' claims against all parties should be subject to arbitration. Accordingly, it is for the arbitrator to decide the issues relating to Plaintiffs' unconscionability defense and whether Plaintiffs' claims against Defendants are subject to Arbitration. However, even if the issue of unconscionability of the Arbitration Agreement were before the Court, the Court would find that such provision was not unconscionable.

> Additionally, Certiphi Screening, although not a party to the Arbitration Agreement, wants the claims that Plaintiffs have asserted against it decided at the binding arbitration required by the Arbitration Agreement. The Court finds the plain language of the Arbitration Agreement expressly covers claims against "agents." Considering Plaintiffs' allegations in this case and drawing all reasonable inferences in favor of arbitration, the Court finds that Plaintiffs' agency theory of liability falls within

the scope of the Arbitration Agreement. For this reason, the Court finds Plaintiffs' claims against Certiphi Screening are subject to arbitration.

Lastly, the Court finds both types of equitable estoppel present themselves in this case and therefore mandate arbitration of Plaintiffs' claims against Certiphi Screening.

App. Vol. II at 24-25. This appeal ensued.

# Discussion and Decision

## Existence and Validity of Arbitration Agreement

This is an appeal from an order compelling arbitration, which we review de novo. *Brumley v. Commw. Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 774-75 (Ind. Ct. App. 2011).

> The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration.... After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.

*Id*. at 775 (quotation and citation omitted).

The Arbitration Agreement contained in the Residency Agreement states that the Federal Arbitration Act ("FAA"), 9 USC § 1, et seq., applies to it. App. V. II at 64.

> Congress enacted the FAA to overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner. *Vaden v. Discover Bank*, 556 U.S. 49 … (2009). The FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468 … (1989). Like other contracts, however, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 … (1996). State law contract principles apply to determine whether parties have agreed to arbitrate. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004).

*Brumley*, 945 N.E.2d at 776.

[17] When considering whether parties agreed to arbitrate a dispute, a reviewing court must attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Progressive Se. Ins. Co., v. Empire Fire & Marine Ins. Co.*, 88 N.E.3d 188, 194 (Ind. Ct. App. 2017); *see also Maynard v. Golden Living*, 56 N.E.3d 1232, 1238 (Ind. Ct. App. 2016) ("If the [contract] language is unambiguous, we may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument."). We presume that contracts represent the freely bargained agreement of the parties, "reflecting the principle that it is in the best interests of the public not to unnecessarily restrict the freedom to contract." *City of New Albany v. Cotner*, 919 N.E.2d 125, 134 (Ind. Ct. App. 2010), *trans. denied*; *see also Sanford v. Castleton*

*Health Care Ctr.*, 813 N.E.2d 411, 416 (Ind. Ct. App. 2004) ("Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he or she signs.").

[18]     Here, the language of the arbitration agreement clearly and plainly states that the parties agree to "binding arbitration" of all disputes "arising out of the Arbitration Agreement or the Resident's stay at [CSL], … whether sounding in breach of contract [or] tort …." App. Vol. II at 63. The contract also clearly states that the decision rendered by an arbitrator "shall be final and binding, … [with] no appeal of the arbitrator's decision by either party." *Id.* Furthermore, the arbitration agreement states in a stand-alone paragraph: "The Arbitrator shall resolve all disputes between the [Resident and CSL], without any restriction whatsoever, as *it is the parties' intent to completely avoid the court system in such matters*." *Id*. at 64 (emphasis added).[5] The language of the agreement is unambiguous and clearly evinces the parties' intent to submit disputes such as the breach of contract and tort claims of Guardian to binding arbitration.

[19]     Despite the plain language of the arbitration agreement, Guardian and Amicus Curiae Indiana Trial Lawyers Association assert that the agreement is invalid

---

[5] Guardian challenges only the validity of the arbitration agreement, not the entire residency agreement as a whole. "If a party challenges the validity of the precise agreement to arbitrate, the court must address the challenge before ordering compliance with that agreement, [*Rent–A–Center, West, Inc. v. Jackson*, -- U.S. --, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010),] whereas 'a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.' *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)." *Brumley*, 945 N.E.2d at 777. Therefore, to the extent the arbitration agreement purports to make its own existence an arbitrable issue, that part of the agreement is invalid. *Id*.

because it is unconscionable. Where—as here—a party challenges only the validity of the arbitration agreement and not the entire contract as a whole, the question of whether an agreement to arbitrate is invalid as unconscionable is a question to be addressed by the courts, not an arbitrator.[6] *Brumley*, 945 N.E.2d at 777 ("If a party challenges the validity of the precise agreement to arbitrate, the court must address the challenge before ordering compliance with that agreement, [*Rent–A–Center, West, Inc. v. Jackson*, -- U.S. --, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010),] whereas 'a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.' *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).").[7] If the court finds that the arbitration clause is valid and enforceable and applicable to the disputes at issue, the court "shall order the parties to proceed with arbitration." *Sanford*, 813 N.E.2d at 416.

[20] Like other contracts, arbitration agreements may be invalidated by generally applicable contract defenses, such as unconscionability. *Brumley*, 945 N.E.2d at 776. As a general rule, a contract may be unenforceable due to unconscionability when there is "a great disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly and unaware of its terms." *McAdams v. Foxcliff Est. Cmty. Ass'n, Inc.*, 92 N.E.3d 1144, 1150

---

[6] The trial court erred to the extent it held otherwise. However, any such error was harmless because the trial court held that, to the extent the issue was before it, the arbitration contract was not unconscionable.

[7] Therefore, to the extent the arbitration agreement purports to make its own existence an arbitrable issue, that part of the agreement is invalid. *Id.*

(Ind. Ct. App. 2018) (quotation and citation omitted). An unconscionable contract is one that "no sensible person not under delusion or duress or in distress would make, and one that no honest and fair person would accept." *Id.* In Indiana,

> [o]ur unconscionability jurisprudence is sub-divided into two branches: substantive and procedural. Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract.

*Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 303 (Ind. Ct. App. 2015) (citations omitted).

[21] Guardian alleges the arbitration agreement is both substantively and procedurally unconscionable. She contends that it is substantively unconscionable because its terms requiring arbitration and prohibiting judicial review, requiring confidentiality of arbitration proceedings, and limiting damages are "oppressively one-sided and harsh." Appellant's Br. at 19. Essentially, Guardian asserts that the arbitration agreement is an "adhesion contract," i.e., "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Sanford*, 813 N.E.2d at 417. However, a contact is not unenforceable merely because one party enjoys advantages over another, and an adhesion contract is not per se

unconscionable.[8]  *Id.*; *see also, e.g.*, *Four Seasons Mfg., Inc. v. Coliseum, LLC*, 870 N.E.2d 494, 502-03 (Ind. Ct. App. 2007) (holding parties may contract to limit damages as long as the limitation is "so definite and positive in its terms as to show the clear intention of the parties"); *Horner v. Carter*, 981 N.E.2d 1210, 1211 (Ind. 2013) ("Indiana policy strongly favors the confidentiality of all matters that occur during mediation.")  Rather, a contract is substantively unconscionable when "the weaker party, in need of goods or services, is not in a position to shop around for better terms, either because the author of the standard contract has a monopoly or the other competitors use the same contract. …"  *DiMizio v. Romo*, 756 N.E.2d 1018, 1024 (Ind. Ct. App. 2001) (quotation and citation omitted), *trans. denied*.

[22]   Guardian has pointed to no evidence indicating that she was the weaker party or that she was not in a position to "shop around for better terms."  *Id*.  In fact, the evidence shows that Guardian did investigate other facilities as possible placements for Resident.  And, although Guardian now states that she did not understand that she was agreeing to confidentiality of arbitration and waiving Resident's access to courts and claims for punitive and exemplary damages, she provides no explanation as to why she did not understand the clear, plain terms of the contract that did just that.  She does not establish—or even claim—that

---

[8]  Furthermore, an arbitration contract is not per se unconscionable simply because it must be signed in order to be admitted to a nursing facility, as Guardian contends, citing *Maynard*, 56 N.E.3d 1232.  This court has found such arbitration provisions not unconscionable in other cases involving nursing home facilities.  *See Tender Loving Care Mgmt., Inc. v. Sherls*,14 N.E.3d 67 (Ind. Ct. App. 2014); *Sanford*, 813 N.E.2d 411.

she had difficulty understanding the terms of the agreement or that she initialed and signed it unwillingly. *See Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 75 (Ind. Ct. App. 2014) (holding an arbitration provision of nursing home contract was not unconscionable in part because there was no allegation that the signatory had difficulty understanding the terms of the Agreement or that he unwillingly signed it). Nor does Guardian provide evidence that she was precluded from asking CSL questions about the agreement; rather, the evidence establishes that Guardian had an appointment with CSL for that exact purpose but cancelled that appointment and did not seek any explanation of the contract thereafter. Moreover, the terms of the agreement do not prohibit Resident from seeking relief for her claims; they simply require that such claims be decided in binding arbitration and not include claims for punitive or exemplary damages. *See id*. The agreement is not substantively unconscionable.

[23] Guardian also contends that the Arbitration Agreement is procedurally unconscionable because the arbitration clause was three pages of an "eighty-three-page document," Appellant's Br. at 24, and CSL provided her with the document "less than twenty-four hours before move-in," Appellant's Reply Br. at 12. CSL emailed the residency and arbitration agreements to Guardian on the morning of May 31, 2018, four calendar days before Resident's move-in date of June 4; that is not an insufficient period of time in which to read a contract. And there is no evidence to suggest that Guardian sought and/or was denied additional time in which to review the agreements.

[24] Furthermore, the arbitration agreement was not "buried or hidden in the Contract," as Guardian seems to suggest. *Sanford*, 813 N.E.2d at 417. Rather, as was the case with the nursing home arbitration agreement at issue in *Sanford*, the arbitration agreement here had its own heading in bold capital letters; it is immediately followed by a signature line requiring Guardian to provide her initials, which she did; and there is no evidence that Guardian was precluded from reading the agreement and asking questions about it. *Id.* at 418. In addition, the very beginning of the arbitration agreement states in bold capital letters and in a larger font than the rest of the contract, "**THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. PLEASE READ IT CAREFULLY IN ITS ENTIRETY BEFORE SIGNING IT.**" App. Vol. II at 63. That Guardian apparently chose to ignore that warning does not make the contract unconscionable.

[25] Finally, Amicus Curiae Indiana Trial Lawyers Association contends that predispute arbitration agreements for nursing home facilities such as the one in this case are unconscionable as against public policy. However, the Residency Agreement was a contract for Resident to live in CSL's "assisted living and memory care apartments," not a nursing home facility. App. Vol. II at 45.[9]

---

[9] CSL disputes that it is a nursing home facility; rather, it states it is an assisted living facility and it submitted an affidavit to that effect in its Appendix, although the affidavit was not submitted in the trial court. It is well-settled that we may not consider matters outside the record in ruling on an appeal. *Schaefer v. Kumar*, 804 N.E.2d 184, 187 n. 3 (Ind.Ct.App.2004), *trans. denied*. And "[f]actual material which was not part of the record in the trial court cannot be made part of a case on appeal merely by including it in an appendix to a party's brief." *Chesterfield Mgmt., Inc. v. Cook*, 655 N.E.2d 98, 101 (Ind. Ct. App. 1996), *trans.*

Regardless, Indiana case law makes it clear that predispute arbitration agreements—whether for assisted living or nursing home facilities—are not unconscionable, per se, as against public policy in this state.

In determining whether an otherwise valid agreement is contrary to declared public policy, we

> keep in mind the principle that it is to the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract and that their agreements are not to be held void as against public policy, unless they are clearly contrary to what the constitution, the legislature, or the judiciary have declared to be the public policy or unless they clearly tend to the injury of the public in some way.

*Gabrill Cabinet Co., Inc. v. Sullivan*, 919 N.E.2d 1162, 1168 (Ind. Ct. App. 2010) (quoting *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 279 (Ind. 1983)). This court has repeatedly upheld nursing facilities' predispute arbitration agreements as not unconscionable or fraudulently induced. *See Maynard*, 56 N.E.3d at 1237, 1239-40 (noting Indiana's "strong public policy favoring enforcement of arbitration agreements"); *Sherls*, 14 N.E.3d at 75 (holding arbitration clause in nursing home facility's admission agreement was not an unconscionable adhesion contract); *Sanford*, 813 N.E.2d at 417-18 (same). *See also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) (holding a state

*denied*. Moreover, Indiana Appellate Rule 34(F), cited by CSL, is only applicable to appellate motions practice. Therefore, we do not consider the affidavit contained in CSL's appendix.

law categorically prohibiting predispute arbitration agreements regarding personal injury claims against nursing homes was preempted by the FAA, 9 U.S.C. § 2, which allows such agreements). Thus, in Indiana, predispute arbitration agreements in nursing home facility contracts are not, per se, against public policy. We see no reason why that case law does not apply equally to assisted living facility contracts.

[27] The cases from other states that Amicus cites did not declare nursing home arbitration agreements unconscionable as a matter of public policy but found the particular arbitration agreements at issue in those cases unconscionable based on facts distinguishable from those at issue in this case. In *Rankin v. Brinton Woods of Frankford, LLC*, unlike here, the arbitration provision was simply two numbered paragraphs within the contract as a whole, in the same format as every other provision, and lacking "any apparent emphasis by either bolded, underlined, or italicized language." 241 Md. App. 604, 624, 211 A.3d 645, 657 (2019). In *Lopez v. Bartlett Care Ctr., LLC*, the arbitration provision was unenforceable in part because it lacked mutuality in that it required residents to arbitrate claims but allowed the facility to pursue claims in court. 39 Cal. App. 5th 311, 321-22, 251 Cal. Rptr. 3d 813, 822 (2019). In *Romano ex rel. Romano v. Manor Care, Inc.*, the arbitration provision was unconscionable in part because it deprived the resident of important statutory remedies the state legislature deemed important to reduce elder abuse in nursing homes. 861 So.2d 59, 62-63 (Fla. Dist. Ct. App. 2003).

[28]     Amicus also directs our attention to a federal Centers for Medicare and Medicaid Services ("CMS") regulation that prohibits long-term care facilities such as nursing homes from requiring that a resident sign a binding arbitration agreement as a condition of admission to the facility. 42 C.F.R. § 483.70(n). Amicus also points to policy statements of the American Bar Association ("ABA"),[10] the National Association of Social Workers ("NASW"),[11] and the American Association of Retired Persons ("AARP")[12] which oppose mandatory, binding, predispute arbitration agreements between residents and long-term care facilities. However, both the federal regulation and the policy statements all relate solely and explicitly to long-term care facilities, and CSL did not contract with Resident for placement in such a facility. Moreover, none of those authorities are binding upon us in this case, whereas relevant Indiana caselaw clearly allows for otherwise valid predispute binding arbitration agreements in the nursing home setting. *Maynard*, 56 N.E.3d 1232; *Sherls*, 14 N.E.3d 67; *Sanford*, 813 N.E.2d 411.

---

[10] https://www.americanbar.org/content/dam/aba/directories/policy/2009_my_111b.authcheckdam.pdf [https://perma.cc/3AZX-TMBF].

[11] https://www.socialworkers.org/LinkClick.aspx?fileticket=rVC5l9q6hSA%3D&portalid=0 [https://perma.cc/2TKF-4SVY].

[12] https://www.aarp.org/content/dam/aarp/politics/advocacy/2017/08/comments-cms-ltc-facility-arbitration-proposed-rule-final-august-2017-aarp.pdf [https://perma.cc/STG4-T7B6].

The arbitration agreement is valid, enforceable, and applicable to Guardian's breach of contract and negligence claims against CSL, Spectrum, and/or Sullivan.[13] The trial court did not err in compelling arbitration of those claims.

## Applicability of Arbitration Agreement to Certiphi

Certiphi filed its own motion to compel arbitration of Guardian's claims against it, even though Certiphi is not a signatory to either the Residency Agreement or the Arbitration Agreement. As a general rule, only parties to a contract or those in privity with the parties have rights under the contract. *E.g.*, *M Jewell, LLC v. Bainbridge*, 113 N.E.3d 685, 689 (Ind. Ct. App. 2018). However, "a non-signatory to an agreement may bind a signatory to an arbitration clause" under certain circumstances,[14] including under a theory of equitable estoppel. *German Am. Fin. Advisors & Tr. Co. v. Reed*, 969 N.E.2d 621, 627 (Ind. Ct. App. 2012). In *Reed*, this Court adopted the reasoning of *MS Dealer Serv. Corp. v. Franklin*, which stated:

> [E]quitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's

---

[13] Guardian does not challenge application of the arbitration agreement to Spectrum or Sullivan separately from her claim that the arbitration agreement is not valid as to CSL.

[14] One such circumstance is where the nonsignatory is a third-party beneficiary of the contact. *Id.* However, Certiphi makes no such claim and the trial court did not base its decision on such a theory.

> claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

177 F.3d 942, 947 (11th Cir. 1999) (citations omitted); *Reed*, 969 N.E.2d at 627. *See also Williams v. Orentlicher*, 939 N.E.2d 663, 670 (Ind. Ct. App. 2011) (noting "when the nonsignatory concedes arbitrability on a contract issue, [federal] courts have routinely held the signatory to be bound by its arbitration clause"), *trans. dismissed*; *cf. Daimler Chrysler Corp., v. Franklin*, 814 N.E.2d 281, 285-86 (Ind. Ct. App. 2004) (holding, *where no equitable estoppel claim was raised*, that nonsignatory could not bind signatory to arbitration agreement when there was no showing nonsignatory was in privity with a signatory or was a third-party beneficiary of the agreement). The trial court held that the claims against Certiphi must be arbitrated based on the holding in *Reed*.

[31] It is clear that at least the second equitable estoppel circumstance is present in this case.[15] That is, Guardian's Count II negligence claims against all of the defendants are interdependent and raise allegations of concerted misconduct by

---

[15] We do not address Certiphi's contention and the trial court's holding that the first equitable estoppel circumstance is present here, as we find arbitration binding under the second equitable estoppel circumstance identified in *Reed*.

all of the defendants. Guardian alleges that CSL/Spectrum and Certiphi negligently failed to conduct an appropriate criminal background check on CSL's employee, Sullivan.[16] Those claims will require the presentation of the same evidence; i.e., evidence that (1) CSL/Spectrum hired Certiphi to do the background check of Sullivan; (2) Certiphi failed to properly do that background check; and (3) the failure to do a proper background check resulted in CSL's employee, Sullivan, harming Resident. In other words, Guardian cannot prove CSL/Spectrum was negligent in doing a background check of Sullivan unless it proves Certiphi did not do an appropriate background check of Sullivan, as CSL/Spectrum had requested. *See Reed*, 969 N.E.2d at 627 (holding Reed was required to arbitrate claims against a nonsignatory where those claims stemmed from conduct of the employee of the signatory and the contractual relationship between the signatories to the contract).

[32] Furthermore, we note that we have held signatories to be bound to their broad-reaching agreements to arbitrate when there is no contract language contradicting that agreement. *See Dulworth v. Bermudez*, 97 N.E.3d 272, 281 (Ind. Ct. App. 2018) (release from liability was applicable to nonsignatory where the unambiguous, broad language of the release clearly applied to "all

---

[16] Guardian contends in her briefs that her negligence claims against CSL/Spectrum are not dependent upon a showing that Certiphi negligently failed to do a proper background check on CLS's employee. However, that is simply not true. The second count of Guardian's complaint alleges no basis for CSL/Spectrum's negligence other than the failure to do a proper background check of Sullivan. And if Certiphi was not negligent in failing to uncover Sullivan's criminal background, then CSL/Spectrum was not negligent as to the background check either because they hired Certiphi to do it.

other persons" and contained no contradictory terms); *Medical Realty Assoc., LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 875 (Ind. Ct. App. 2010) (signatory defendant was permitted to require signatory plaintiff to arbitrate claim against nonsignatory where arbitration provision used "broad sweeping phrases such as 'any claims' and 'all claims'" and did not specifically exclude the claim against the nonsignatory). Here, the arbitration agreement contains broad, sweeping language under which "any and all claims involving … any of the Resident's stays at [CSL] … shall be submitted to and resolved by binding arbitration[,] … [including] claims against [CSL's] employees, agents, officers, directors, any parent, subsidiary or affiliate of [CSL]." App. Vol. II at 63. And there is no language in the agreement contradicting the broad agreement to arbitrate "all claims." *See Dulworth*, 97 N.E.3d at 281 ("Language which releases 'all persons' does just that and is clear as long as no other terms are contradictory.") (quoting *Dobson v. Citizen Gas & Coke Util.*, 634 N.E.2d 1343, 1345 (Ind. Ct. App. 1994)).

[33] The trial court did not err when it required Guardian to arbitrate her claims against Certiphi.[17]

---

[17] Because we hold that equitable estoppel principles require arbitration of Guardian's claims against Certiphi, we do not address Certiphi's contention that it is entitled to arbitration because Guardian brought an "agency theory" of liability against it.

# Conclusion

It is clear from the plain language of the Arbitration Agreement that it applies to Guardian's claims against CSL (and, since not challenged by Guardian, Spectrum and Sullivan), and there is no evidence establishing that the Arbitration Agreement is invalid as unconscionable and against public policy. In addition, because Count II of Guardian's complaint raises allegations of substantially interdependent and concerted misconduct by both Certiphi (a nonsignatory) and CSL (a signatory), Guardian is equitably estopped from asserting that her claims against Certiphi are not subject to the broad language of her agreement to arbitrate "all claims."

Affirmed.

Kirsch, J., and Mathias, J., concur.